DALLAS HART *v.* STATE OF INDIANA.

[No. 375S563. Filed August 17, 1976.]

*George T. Popcheff,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant was indicted for first degree murder, tried by jury, found guilty of second degree murder under Ind. Code § 35-1-54-1 (Burns 1975) and sentenced to a term of imprisonment of fifteen to twenty-five years.

The questions here presented concern (1) the sufficiency of the evidence to support the elements of purpose and malice and (2) the constitutionality and correctness of several of the court's rulings restricting appellant's voir dire examination of prospective jurors.

The first question presented concerns the sufficiency of the evidence to sustain the verdict of guilty. In reviewing this allegation we do not weigh the evidence or resolve questions of credibility, but we look to that evidence and the reasonable inferences therefrom which support the verdict. *Glover* v. *State,* (1970) 253 Ind. 536, 255 N.E.2d 657. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a

reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt.

The evidence showed that appellant, Dallas Hart, and the alleged victim, Julia Hart, were married in 1946 and divorced in 1972. Following the divorce, they continued to reside in the same house. On September 3, 1973, he moved out because of their continuous quarreling. Even after the divorce, he was often angrily jealous and charged her with having affairs. She retaliated by complaining about his inadequacies "in the bedroom."

On September 16, 1973, between 5:00 and 5:30 p.m., appellant, Mrs. Hart, and their son, Stephen, were having dinner at Mrs. Hart's house. She announced her intention to marry one Raymond Hayes. Appellant became frantic and upset and fell on the floor crying and shaking. This lasted for about twenty minutes. Then he regained his composure and again sat down at the table. After an additional fifteen minutes, appellant and Stephen got up from the table and left the house. They parted, and appellant went to his daughter Sharon's house a few blocks from Mrs. Hart's house. He told her that her mother had plans to marry another man and asked her to intervene with Mrs. Hart on his behalf. She refused. He left that house. Thirty to forty-five minutes later, he returned and again asked his daughter to go and talk with her mother. She refused, but, at his request, dialed her mother's unlisted number for him. She then handed him the phone and heard him mumble something and then blurt out into the phone, "Is the son of a bitch worth your life?" After hanging up the phone and preparing to leave, he handed her a slip of paper containing his mother's address and telephone number, and said "Sherry, if anything happens, call my mother." She then saw him drive away a short distance, park a half block from Mrs. Hart's house, and start across the street.

About seven o'clock, Sharon received a telephone call from appellant. He said, "My God! Get down here quick, Sharon! I've killed your mother!" Her husband came in and calmed

her down. She dialed her mother's number, and appellant answered. She said, "My God, Dad, what did you do it with?" He replied, "I shot her with a gun. My God, get down here quick! I've shot her with a gun."

Appellant also phoned his son, Stephen, at about the same time. Appellant said, "Steve, son, get over here quick. I've just killed your mother." Stephen went over and found his father lying on the body of Mrs. Hart.

A neighbor testified that, on the evening in question, she saw appellant break a kitchen window and enter the house. Shortly thereafter she heard two loud noises and then saw appellant in the house at the telephone.

An investigating officer, arriving at the scene, found a .38 pistol on a utility table beneath a wall telephone. The pistol belonged to appellant. The pistol had unidentifiable prints on it, but blood on it matched the type of the victim. There were five cartridges in the weapon, two of which were spent.

Mrs. Hart died of a head wound. She had a bullet wound in her hand also. A ballistics technician testified that the bullet taken from her brain could have been fired from appellant's pistol. A bullet hole was discovered in the ceiling above the stairs leading to the bedroom in which Mrs. Hart's body was found.

Appellant believes that there is no evidence here from which a reasonable jury could infer that he killed Mrs. Hart. The evidence set out above shows that, minutes after threatening her life over the phone, he went to her house and broke into the kitchen window. Shortly thereafter, two loud sounds were heard coming from the house. Within minutes, he was observed using the telephone at which the bloody pistol was found. He informed both his son and daughter that he had killed Mrs. Hart. Her body was discovered in the house minutes later. She died from a gunshot which could have come from appellant's pistol. From this evidence the jury might reasonably conclude beyond a reasonable doubt that appellant shot her and that she died from that wound.

Appellant also argues that there is no evidence from which a reasonable jury could infer that he killed Mrs. Hart purposely and maliciously. This Court recognizes that the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm permits an inference that the accused was acting with malice and purpose. *Livingston* v. *State,* (1972) 257 Ind. 620, 277 N.E.2d 363; *Jones* v. *State,* (1970) 253 Ind. 456, 255 N.E.2d 105. Appellant claims that he did not wield the pistol in a manner likely to cause death or great bodily harm. According to appellant, the evidence shows that the fatal bullet first passed through Mrs. Hart's hand and then into her head causing death. Appellant argues that the evidence shows only that a bullet was fired at Mrs. Hart's hand, a non-vital part of the human body, and that it struck her in the head only fortuitously. We must reject this argument. Other evidence disclosed that the bullet entered the palm of the hand and exited through the back of the hand. Powder burns were left on the palm of the hand. This would permit the inference that at the time the shot was fired, appellant was holding the gun slightly more than an arm's length away from Mrs. Hart, pointing it in her direction. The jury, therefore, could have reasonably discounted the wound in the hand upon the basis that it occurred as Mrs. Hart attempted to ward off his attack with her outstretched hand.

Moreover, here there is additional evidence of malice and purpose. Appellant returned to Mrs. Hart's house to harm her, forcibly entered the house, and twice fired the pistol. There is no indication that she was armed or posed any physical threat to him. Upon the basis of the evidence presented, the jury was warranted in its finding that appellant killed Mrs. Hart with malice and purpose.

Appellant also contends that the State's evidence was insufficient in that it failed to show that appellant did not act in the heat of passion and that, therefore, the evidence would support only a conviction for voluntary manslaughter. Again we disagree. More than

an hour elapsed between appellant's violent reaction to Mrs. Hart's announcement of her plans to remarry and the shooting. During that time, appellant spoke with his son and daughter in a cogent fashion and set in motion a design to harm Mrs. Hart if she did not change her mind. As one step in this plan, appellant gave his daughter a slip of paper with his mother's address and telephone number on it and asked her to call his mother if anything happened. Here, the evidence warrants the conclusion that appellant's anger and emotional upset had cooled off and was supplanted by a design to grievously harm a fellow human being, which design was consciously carried out step by step. *Warren* v. *State*, (1963) 243 Ind. 508, 188 N.E.2d 108. Again, the evidence of malice and purpose was sufficient.

Appellant also claims that the court erred in overruling his motion for judgment of acquittal at the conclusion of all the evidence. On the basis of the evidence considered above, the State proved each of the allegations in the indictment and each of the material elements of the offense of second degree murder, and this evidence was of a character sufficient in probative value to warrant a finding of guilty. The motion was therefore correctly overruled.

Appellant next contends that the trial court unduly restricted his participation in voir dire examination of prospective jurors and unlawfully impeded the exercise of his peremptory challenges. The trial court imposed upon the parties a procedure governing their participation in the jury selection process in court. Basically, the procedure relegated the parties to supplementing the trial judge's jury questionnaire and oral voir dire by questioning the jurors orally for twenty minutes and by submitting written questions to the judge for him to put to the prospective jurors. The trial judge first conducted an oral examination of prospective jurors. Then, the parties questioned the jury orally for twenty minutes. Thereafter, appellant submitted seventy-one suggested, written voir dire questions to the trial judge, and, while it is not clear in the record, it appears that the judge put sixty-seven

of these to the prospective jurors and refused the balance on various grounds. And, while we are hampered by the lack of clarity in the record, it appears that thereafter each party was required to exercise peremptory challenges simultaneously and independently, in writing. Challenges for cause were made as the grounds therefor became manifest.

Appellant first contends that the twenty minute limitation upon oral questioning by the parties is an unlawful exercise of the trial judge's authority to govern the jury selection process. This type of restriction was first invited by this Court in *Robinson* v. *State,* (1973) 260 Ind. 517, 297 N.E.2d 409. Thereafter, in *White* v. *State,* (1975) 263 Ind. 302, 330 N.E.2d 84, we approved a procedure imposed by a trial court which relegated the parties to supplementing the judge's voir dire questioning by submitting written questions to the judge, who in turn put those questions approved by him to prospective jurors. Under that procedure, counsel was not permitted to directly address prospective jurors at all. *A fortiori,* this trial court's rule limiting counsel to twenty minutes of oral questioning is not, on its face, and without more, an abuse of the court's discretion.

Appellant next complains that the twenty minute time limitation upon oral voir dire examination by the parties effectively denied him a fair trial, guaranteed by the Fourteenth Amendment, and a trial by an impartial jury, guaranteed by Art. 7, § 13, of the Indiana Constitution. He does not buttress this assertion by supporting authority or argument in his brief. However, the practice of permitting the trial judge to conduct voir dire examination of prospective jurors and to limit supplementation thereof by counsel has two legitimate purposes, namely, to prohibit counsel from injecting prejudicial matter into the trial, through planting the seeds thereof during voir dire, and to expedite the litigation. The purpose of voir dire examination is to permit the discovery of grounds for challenges for cause and peremptory challenges. *Johnston* v. *State,* (1959) 239 Ind. 77, 155 N.E.2d 129. And, challenge

procedure, in turn, has the purpose of insuring a fair trial by an impartial jury. Under the procedure adopted by the trial court here, the twenty minute period of oral questioning does not stand alone as the sole means by which the parties can participate in the examination. They are permitted also to submit written questions to supplement their own oral questioning. Both types of participation are in addition to the court's own examination. The oral questioning period does permit counsel an opportunity to directly address some of the jurors and thereby to gauge their reactions to him and to his cause. We think that the procedure which the trial court adopted here serves to further the legitimate purposes intended to be served by the grant of authority to the tral judge to limit supplementation of court voir dire and, at the same time, does not appreciably reduce the effectiveness of the entire procedure for selecting an impartial jury.

Appellant further complains that the trial court erred in refusing to put one of his suggested voir dire questions to the jury. That question was:

> "7.  Have you ever been a juror in a criminal case? If yes, please explain."

This question should have been put to the jury. It had, as its purpose, the discovery of any prejudice on the part of an individual prospective juror which resulted from experiences he had had as a juror in another case, which might render him unsuited for jury service in this particular case. The question was not intended to inject prejudicial matter into the case. However, here, the court's refusal to put this question to the jury was not an abuse of discretion, as the jurors were asked other questions which probed specific areas of potential bias arising from past jury service. They were asked about their attitudes toward appellant's defense of insanity and reliance upon the presence of heat of passion. They were asked whether they were acquainted with any of the specifically named witnesses for the State. And, they were asked general questions about their willingness to base their verdict solely upon the evidence presented to them in the case.

Appellant next complains that the voir dire procedure was unlawful in that it served to reduce his peremptory challenges to fewer than the ten allotted by Ind. Code § 35-1-30-2 (Burns 1975). Because the judge required the State and the defense to exercise their first peremptory challenges simultaneously and independently, both exercised two of their challenges on the same jurors. Certainly, appellant had the absolute right by statute to peremptorily challenge ten jurors. He did just that here, and the statutory mandate was fulfilled. We cannot agree that the exercise of peremptory challenges by the State upon the same jurors served to deny him that right. *Accord: Pointer* v. *U.S.,* (1894) 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208.

The judgment of the trial court is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 352 N.E.2d 712.