ROBERT LEE DICKSON *v.* STATE OF INDIANA.

[No. 1175S351. Filed September 20, 1976.]

*Michael T. Conway,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *James N. Shumacker,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant, Robert Lee Dickson, was charged by information with the offenses of commission of a felony

while armed, to-wit: robbery, Ind. Code § 35-12-1-1 (Burns 1975), and physical injury in the commission of a robbery, Ind. Code § 35-13-4-6 (Burns 1975). After a trial before the court, appellant was found guilty of both counts. However, after reconsideration, the court found appellant guilty of physical injury only, the armed robbery being a lesser included offense merged into the second count. Appellant filed a motion to correct errors which was overruled.

On appeal, he raises several interrelated issues: (1) whether the court committed reversible error in denying appellant a hearing on his motion to suppress the in-court identification as the product of a prior unduly suggestive confrontation; (2) whether it was reversible error to overrule appellant's objection to the in-court identification; (3) whether the court erred in overruling appellant's motion for judgment on the evidence as to both counts at the conclusion of the State's evidence, as the State had failed to prove a prima facie case; (4) whether the verdict finding appellant guilty of inflicting physical injury in the commission of a robbery was supported by sufficient material evidence of identity; (5) whether the court erred in overruling appellant's motion for mistrial at the conclusion of the State's evidence, because of the court's denial of appellant's objection to the in-court identification. Separate issues on appeal are: (6) whether the verdict of sanity was supported by sufficient material evidence; (7) whether there was sufficient material evidence that the injury occurred in the commission of a robbery to overrule appellant's motion for judgment on the evidence and to sustain the verdict.

We consider first the issue of identification. At trial, when the robbery victim was on the stand, the State asked him if the person who robbed and shot him was in the courtroom. He answered that he was and that he was sitting next to defense counsel. Appellant objected:

"Your Honor, I would object to any in-court identification by this man as a product of a complication which occurred on May 10, 1974, which was so unnecessarily suggestive and improper as to deny this Defendant due process of law as set down by Wade v. Gilbert."

And the following colloquy occurred:

"Court: Has there been any motion filed on that?

Mr. Conway: No. There hasn't, Your Honor.

Court: Rule Ten of this Court, under the Rules—Motions for Rules of the Case provides: '10a. All motions or petitions for orders fixing rules of the case such as but not limited to suppression or limitation of evidence or argument or available summary judgment procedure shall be filed no later than the case's second weekday before the first trial date and stand for a hearing on the case's last weekday before the first trial date.' Now, 'If for any reason such motion or petition has not been seasonably filed and hence is not determined before the trial date, the moving party shall, at least twenty four hours before trial time, move for a 8:30 A.M. hearing on trial date and be prepared to complete such hearing by 9:00 A.M. If such hearing requires longer, the Court may, if the failure to seasonably file was the fault of the moving party, treat any time beyond 9:00 A.M. as a late appearance and treat same as prescribed in Rule 2b.' I'm going to enforce the rules of this Court. And, I will, therefore overrule the motion. Now, you may have a good reversal error. These rules have been in effect for a long time and I'm going to enforce them. Proceed."

After this, the witness made a more precise identification of appellant by standing in front of him.

At a point perhaps five or ten minutes later in the victim's testimony, on cross-examination, the following evidence was heard:

"Q. When was the next time you saw this individual after the shooting?

A. In the police station.

Q. Who was in the—whereabouts in the police station?

A. One of the upper floors. I'm not sure what floor.

Q. Were you in the open hallway or in a room?

A. In a room.

Q. Who was in that room?

A. There was the Defendant sitting at a desk with several officers around him.

Q. And, how did you get to that room?

A. Well, I walked in through the hallway.

Q. Were you summoned to that room?

A. Yes.

Q. Do you know who summoned you to that room?

A. I received a phone call from a police officer. I don't recall the name.

Q. And, then, you went to that room.

A. Yes.

Q. Was the Defendant the only—how do you know the others were police officers? Strike the beginning of that. How do you know the others were police officers?

A. Well, I don't. I just assume they were because there was guns on their hips. And, they were sitting around the Defendant.

Q. And, everybody was around the Defendant? Did anybody take any statements about the Defendant?

A. No.

Q. Did they ask you if you recognized him?

A. Yes.

Q. One of the officers asked if you recognized him?

A. Yes.

Q. And, he was all by himself there surrounded by officers?

A. I assume they were officers.

Q. And, they asked if this was the man who robbed you?

A. Yes.

Q. Nobody else in there. No other group of people. This wasn't a line-up or anything like that?

A. No."

Appellant objected at this point:

"Mr. Conway: Your Honor, again, I would renew my motion, suppression of the in-court identification.

Court: The Court is going to enforce the rules. That's what I wrote them for and, if the lawyers don't find them, that's just too bad. I—that doesn't mean that I won't take into consideration the circumstances. And, after all the evidence is in reference to the matter—As matter of fact, it's not that important, of course, where's there's not a Jury anyway because the Court would have to hear all the evidence to make a determination. And, I will make a determination as to whether or not I think his ability to identify has been destroyed. And, if Counsel don't develop it as far as I want it to be developed, I'll ask a few questions on my own. Proceed. For example, nobody told me yet when this happened."

After this, the witness stated that he had looked at appellant very closely, for a few minutes, on May 10th because he

wanted to be positive and then he had said that appellant was the man.

On re-direct, the victim stated that he went to police headquarters three times. On May 8th, he looked at mug shots. On May 9th, he looked at another suspect and at other photographs. On May 10th, he identified appellant. At no point during trial did the trial court make a further ruling on the admissibility of the in-court identification challenged by appellant.

The Rules of the Criminal Court of Marion County, Division 3, included:

"Rule 10. Motions for Rules of the Case 10a All motions or petitions for orders fixing rules of the case, such as, but not limited to, suppression or limitations of evidence, or argument or available summary judgment procedure shall be filed no later than the case's second weekday before the first trial date, and stand for hearing on the case's last weekday before the first trial date. If, for any reason, such motion or petition has not been seasonably filed and hence is not determined before trial date, the moving party shall, at least 24 hours before trial time, move for an 8:30 A.M. hearing on trial date and be prepared to complete such hearing by 9:00 A.M. If such hearing requires longer, the Court, may, if the failure to seasonably file was the fault of the moving party, treat any time beyond 9:00 A.M. as a late appearance and treat same as prescribed in Rule 2(b)."

On appeal, appellant raises the issue of whether the court committed reversible error in denying him a hearing on his motion to suppress and by overruling his objection on the merits. In order to resolve this issue a determination must be made whether appellant waived his right to challenge the admissibility of the in-court identification· on due process grounds by failing to move for suppression twenty-four hours before trial time.

In *Henry* v. *Mississippi,* (1965) 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, the Court considered a similar issue: whether the defense attorneys' failure to object at the time certain testimony was admitted was a waiver of the right to argue

on appeal that the testimony was the fruit of an unlawful search. The Court noted that the contemporaneous objection rule permits the court the opportunity to exclude tainted evidence. However, it noted that, in the case before it, that purpose was substantially served by a motion for a directed verdict. Without deciding that issue, the court looked to a preliminary question: Did petitioner's counsel deliberately bypass the opportunity to make a timely objection? In that instance, petitioner would have forfeited his state court remedies. The Court quoted from *Fay* v. *Noia,* (1963) 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837, to the effect that there should be an evidentiary hearing to determine if petitioner,

> "after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate bypassing of state procedures. . . ." 379 U.S. at 451.

However, it later stated:

> "Although trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims, see Whitus v. Balkcom, 333 F.2d 496 (C.A. 5th Cir. 1964), we think that the deliberate bypassing by counsel of the contemporaneous objection rule as a part of trial strategy would have that effect in this case." 379 U.S. at 451, 452.

Finally, the Court noted that only evidence extrinsic to the record can show a waiver and that the State should have the opportunity to show it.

By analogy, in this case, the trial court has a procedural rule with a legitimate purpose. However, because the court's rule has limited its consideration of a constitutional claim, namely, whether the procedures leading to an eyewitness identification were so defective as to make the identification inadmissible as a matter of law, *Foster* v. *California,* (1969) 394 U.S. 440, 442, n. 2, 89 S.Ct. 1127, 22 L.Ed.2d 402, there must be a determination whether ap-

pellant and counsel deliberately by-passed the opportunity to file a motion for suppression of the in-court identification of appellant by the witness. In contrast to a decision to forego making a contemporaneous objection, this pre-trial decision must be made only after consultation with the defendant, since there is ample opportunity for consultation and the decision not to challenge the basis of an in-court identification is a very important one. *Brookhart* v. *Janis,* (1966) 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314. As the Court stated in *United States* v. *Wade,* (1967) 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 :

> "[T]he confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of eyewitness identification are well known. . . ."

When a trial begins and there has been no pre-trial motion to suppress in accordance with a rule such as Rule 10 of Criminal Division III, the judge presumes that defense counsel has knowingly waived his right to challenge the legality of the evidence. However, as soon as counsel makes a specific objection to the admission of such evidence at trial, his silence before trial becomes ambiguous. If the State or the court itself challenges the defendant's objection on the ground of waiver, then the judge must have a hearing out of the presence of the jury to determine whether counsel deliberately by-passed the correct procedure for strategic reasons.

At the hearing, if the evidence indicates that, for reasons of strategy, counsel, after consultation with appellant, purposely made no timely pre-trial motion, then the inquiry is at an end. Appellant has waived the right to challenge the pre-trial identification procedures on due process grounds. After trial, he may appeal the trial court's determination of deliberate by-pass. If, however, the defense shows that counsel was negligent in failing to file a pre-trial motion or did not file one for good cause, such as, ignorance of the identification

procedures used, even after due diligence, then the trial court must have a hearing on the merits of the constitutional claim.

In order to resolve appellant's contention of reversible error in denying him a hearing on the in-trial motion to suppress, we must remand this case for a hearing on counsel's intention before trial. The outcome of the hearing may, on the one hand, be a finding of deliberate by-pass. Or, on the other hand, the outcome may be a finding of negligent by-pass or by-pass for good cause.

Finally, we would question whether one division of the Marion County Criminal Court may make rules governing practice in that one division. Indiana Code § 33-9-9-4 through 6 (Burns 1975) set out the powers of the judges of the divisions of the Marion County Criminal Court and of the general term of that court. Indiana Code § 33-9-9-4 provides that the judges of the divisions shall have all the powers which the judge of the criminal court in any county has, "except as herein otherwise specifically provided." Indiana Code § 33-9-9-6 provides:

> "Such court shall meet in general term to exercise the following powers and authority: (1) to make and adopt rules and regulations for conducting the business of the court, not repugnant to the laws of this State."

It makes good sense for each of the divisions of the Criminal Court to have the same rules. Significant variations from division to division needlessly complicate the practice of law in that court. It would be well for the judges of that court to meet in general term, as authorized by Ind. Code § 33-9-9-5, and adopt rules of court as permitted by Ind. R. Tr. P. 81(a).

Appellant challenges the sufficiency of the evidence of identification. If the court finds deliberate by-pass and the identification evidence given at trial by the victim-eyewitness is determined to have been admissible due to waiver, then the State has proved, beyond a reasonable doubt, the identity of appellant as the robber-assailant. The victim testified that he was the assistant manager of an A & P Store.

On May 6, 1974, about 5:30 p.m., the victim noticed a man coming toward the store office window just as he was about to leave the office. He returned to the office window to help the man and was confronted with a revolver. The man asked the manager for money. He replied that he did not have any. During this short exchange, the two were on either side of a glass partition, their faces only a foot or two apart. Then, the man turned and walked away. With his eyes, the witness followed him around two sides of the office. When the man was half-way around, the witness yelled out, "It's a hold-up. Look at this man," trying to attract the attention of customers to help him identify the man later. At that point, the man stopped at the office door, pulled out his gun, and said, "You're right." The witness stepped behind the safe. When he saw the outside doors of the store open and close, he thought the man had gone. He stepped out of the office then to walk around it to go to the only phone in the store to call the police. At that moment, he saw the man over his shoulder. He started to turn around to face him and was shot. At that point, the man was outside the store, in the open doorway, fifteen to twenty feet away. The witness estimated that three to five minutes elapsed from the time the man came to the window until the witness was shot.

We also know that the witness was subjected to a very suggestive identification show-up of another suspect. The police had taken into custody a man with some of the characteristics of the men in the mug shots the witness had set aside as similar to appellant. Two days after the crime, the witness was called to the station and asked if the man, whom he could observe through a one-way mirror talking with detectives, was the robber-assailant. The witness said that he was not the man.

Appellant argues that the State did not prove beyond a reasonable doubt that appellant was sane at the time of the commission of the crime. One of the three psychiatrists who examined appellant about a month after the crime found

him to be "suffering from a mental disorder of such quality and severity that he is not able to sufficiently understand the nature of the proceedings and to assist his attorney in his defense." This report stated no conclusion on appellant's state of mind at the time of the crime. Appellant argues that the doctor's finding of an inability to think clearly, of a severe mental disorder, was conclusive of appellant's state of mind a month earlier, at the time of the crime. However, that is not the explanation the doctor gave at trial.

The doctor testified:

"When I examined him a year ago, I felt his mental state was such at that time that I could not evaluate what it might have been prior to that. My more recent examination found his condition to be much improved. And, I did not find any indication that he was suffering from a mental disease or illness at the time of the alleged offense, other than probable drug intoxication."

He stated that appellant's severe mental disorder and negative attitude were caused in part by his being charged and incarcerated.

"Well, I don't think that's inconsistent in that changes of the mental state can occur rather rapidly for the worse or for the better. To my opinion most of the mental condition that I saw in July of 1974, that made me feel that he was not competent to stand trial was of recent onset."

With the passage of a year's time in jail, appellant had a calmer emotional state. He was able to give the doctor a better history and to talk about what he was doing in life and what he was thinking during the period of time of the offense, although he could not recall the offense. Based on this second examination, the doctor was able to form an opinion of appellant's mental state at the time of the crime. The doctor determined that appellant had the mental capacity at the time of the crime to appreciate the nature of his conduct and conform his conduct to the requirements of law.

Both of the other doctors who examined appellant in June and July, 1974, testified that, in their opinions, appellant was "not suffering from any mental disease or disorder" and was

"sane," although he may well have been intoxicated by heroin. The State clearly met its burden of proving sanity beyond a reasonable doubt.

Appellant's last argument is that the State did not prove all the elements of the offense of inflicting injury in the commission of a robbery, Ind. Code § 35-13-4-6. Appellant argues that the State did not show that the injury occurred while appellant was "taking or attempting to take from the person of another" something of value. Appellant argues that the attempted robbery was over and he had left the store, when he shot the victim of the attempted robbery.

As we have set out above, appellant used his gun in the attempted robbery. When the victim told appellant that he had no money, appellant went around the office toward the store exit. When the victim yelled out, appellant pointed his gun at him. Appellant then went on out the door and stood outside. When the victim came out the office door, appellant shot him.

The State does not have to prove premeditation. Appellant could very well have been surprised to see the victim come out the office door near the exit. He probably did not know that the victim intended to use the phone and call the police. Still, the reason appellant was at the scene, the reason he was armed, the reason he shot the victim was because he had attempted a robbery of that man. Appellant had not left the scene yet. Only three to five minutes had passed since the robbery attempt. There had been no intervening events to explain the shooting as caused by something other than the attempted robbery. The act of injuring and the taking could only be simultaneous if the injury occurred as the robber was removing the wallet from the man's pocket. Otherwise, the injury must precede or follow the robbery or robbery attempt by some minutes. Where there is no intervening cause for the injury and only five minutes have passed since the attempted robbery, the State has proven beyond a reasonable doubt infliction of an

injury *while* attempting to take from a person something of value.

Finally, appellant notes that the verdict cannot be sustained because the court found him not guilty of robbery or attempted robbery. As we noted, the court found appellant guilty of inflicting physical injury in the commission of a robbery and found that armed robbery was a lesser included offense of inflicting injury, so that it was improper to convict appellant of both offenses. The court did not, by that finding, hold him innocent of armed robbery.

We, therefore, reverse the decision of the trial court overruling specification No. 1, of the motion to correct errors, in which appellant asserts that he was denied a hearing on his objection to the in-court identification, and order that this appeal be held in abeyance. This cause is remanded for a waiver hearing to determine whether a deliberate by-pass of the pre-trial suppression procedure occurred, such hearing to be conducted in accordance with this opinion. The trial court is instructed to certify its determination following the hearing to this Court for final disposition of this appeal.

Givan, C.J. and Prentice, J., concur; Arterburn and Hunter, JJ., dissent without opinion.

NOTE.—Reported at 354 N.E.2d 157.