JAMES ANDERSON *v.* STATE OF INDIANA.

[No. 2-875A202. Filed February 10, 1977.]

*David W. Foley, Mullin, Foley & Gilroy,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John O'Bryan,* Deputy Attorney General, for appellee.

WHITE, J.—James Andeson was convicted by jury of first degree burglary and sentenced to an indeterminate term of ten to twenty years. He contends (1) the trial court erred in imposing a twenty-minute time limit on his *voir dire* examination of prospective jurors and (2) the evidence is insufficient to convict.

On the first contention, we reverse.

## I.

The examination of prospective jurors on their *voir dire* was conducted in conformity with a purported[1] rule of Division III of the Criminal Court of Marion County, which apparently read as follows:[2]

---

1. *Dickson* v. *State* (1976), 265 Ind. 325, 354 N.E.2d 157, 162, 54 Ind. Dec. 626, 632, questioned "whether one division of the Marion County Criminal Court may make rules governing practice in that one division", since Ind. Ann. Stat. § 33-9-9-6 (Burns Code Ed., 1975), provides that "general term" shall make rules for the court.

2. The Record of the case does not contain a copy of the rule in effect on the day of trial (March 17, 1975). We quote from rules

## "RULE 13. VOIR DIRE RULES

"13(a) A large regular panel of jurors shall be maintained and neither special venires or talesmen will be used, except in emergencies.

"13(b) Questionnaires will be mailed to veniremen with their summons, and return, with full answers thereto, will be deemed compliance with the summons, subject to call.

"13(c) The returned questionnaires shall be reproduced in quadruple, fully alphabetized and placed in ring binders. One shall always lay upon the clerk's table, available to counsel during all office hours, except when in use by a Special Judge. One shall lay upon each counsel table during voire dire. Those panelists called shall be first sworn to the truthfulness of their answers to their questionnaires, and then, upon any further examination as the Court deems necessary, they shall be excused or incorporated into the regular panel, which shall be done by order book entry.

"The entire panel shall be divided into sections of approximately 30 each or such additional numbers as is deemed necessary to empanel a trial jury in any given case. The sections will be formed as the panelists were drawn and the sections shall be called in rotation, for each successive trial, as they were drawn.

"13(d) Regular panel members will be again sworn, in each case to be tried, to their answers to their questionnaires and to truthfully answer further questions concerning their qualifications as jurors in the cause. If during the voir dire a panelist states an incorrect answer was inadvertently given, the panelist may correct said answer in his or her own hand and be re-sworn. Any or all pertinent questionnaires will be received in evidence upon the trial of any challenge to an individual or to the array, as the case may be.

"The court will first interrogate the panelists especially regarding:

(1) Kinship or acquaintance with any of the parties, attorneys or known witnesses;

(2) Victimization of self or family by the type of crime charged;

---

"Revised October 17, 1975", of which we take judicial notice because certified copies thereof were furnished to the Clerk of the Supreme Court and Court of Appeals, January 15, 1976, pursuant to Trial Rule 81, Indiana Rules of Procedure. No prior filing is on record. Any change the revision may have made in Rule 13 is irrelevant here since everything of which appellant complains conforms to the rule as revised.

(3) A statement of the rights of the accused will be made and an inquiry made as to any opinions which would inhibit them from honoring and being governed thereby.

"13 (e)    The parties will then have 20 minutes each to interrogate prospective jurors, reserving such time as he elects for second or subsequent rounds. The State goes first.

"13 (f)   Challenges must be exercised at the close of the first round as to those seated in the jury box.

"13 (g)    At the close of each succeeding round challenges, if any, may be exercised only as to those occupying seats vacated at the end of the previous round.

"A 'round' may be at the end of a period of interrogation by only one party where the other party has exhausted his time or passed. But such party's right of challenge, under the above rules, remains, as prescribed above.

"13 (h)    Counsel may interrogate those passed in previous rounds and if cause, not previously touched upon, is developed, in any degree, he may challenge for cause. If the disclosure relates to cause, but the Court finds it inadequate, the Court will permit use of a peremptory challenge if the party has one left from his statutory quota."

When the jury selection process began for Anderson's trial there were twelve veniremen in the jury box and an undisclosed number of others elsewhere in the court room. All were sworn by the court (presumably to truthfully answer concerning their qualifications to sit as jurors as provided in the quoted rule). The court then asked a few general questions but the transcript does not reveal whether his questions were directed to all prospective jurors in the courtroom or only to those already in the jury box. The questions were so worded as to require a response only from an unspecified "any of you" who, for instance, "know or are related to any of the parties I have just mentioned". The record does disclose that the only persons who responded were among the first twelve in the box.

The court's questions, briefly explored: (1) whether any veniremen were acquainted with or related to parties, attorneys or witnesses, or had knowledge of the case; (2)

whether any had been burglary victims; (3) whether each could honor defendant's rights, e.g., to remain silent, etc.; and (4) whether the length of the sentence mandated for first degree burglary would deter conviction. The prosecutor then asked questions of each of the twelve until informed by the court that "[y]our time has expired and the jury is now with the Defendant for twenty minutes." Defendant's attorney then spent twenty minutes questioning the twelve in the box. At that time the court requested counsel to pass up to him (pursuant to his Rule 13(f) and (i)) their written challenges. Four of those in the box were challenged peremptorily, but because the written challenges were not made a part of the record it does not disclose who challenged whom. When the four who had been challenged were excused and their replacements had been called to the box, the court immediately asked for further challenges from the State and the defendant, at which time this colloquy ensued:

> [Defense attorney]: "Judge, is there any voir dire  I can't properly balance. . . .
>
> "Court: Well, you have exhausted your time, Mr. Foley. I said when I announced the time that you could use and reserve as you saw fit.
>
> "Mr. Foley: Then I would have to object to exercising any challenges or go any further without some kind of voir dire on these four jurors.
>
> "The Court: The - - - well, what you are objecting to is the rule. I am simply applying the rule.
>
> *   *   *
>
> "Mr. Foley: Yes. I would ask for a relaxation, say, of five minutes or some part of it, Judge.
>
> "Court: Overruled. Mr. Inks and Mr. Lea are excused."

Those two excused by the court were among the four who had just been called. They also appear to have been challenged peremptorily but, again, the record is silent as to the challenger. Their replacements were also excused and replaced. There were no more challenges. The jury was then accepted by the State and by the defendant subject to his prior objec-

tion. Thus the trial was before twelve jurors, one-third of whom had never been questioned on *voir dire,* directly or indirectly, by the State or the defendant despite the latter's request for time to do so.

While it is quite reasonable to assume that the questionnaires filled out by the veniremen pursuant to the trial court's quoted rule, paragraph (b) and (c) (but never made a part of the record of this case) and their silent answers to the judge's in-court questions were sufficient to negate all grounds for challenge for cause, there is no reason to believe that the questionnaires provided sufficient information to enable either party to exercise intelligently its right to ten peremptory challenges.

Although some states (e.g., California) do not permit *voir dire* examination for the purpose of determining the advisability of peremptory challenges[3], Indiana has long followed the rule that "examination of jurors on their *voir dire* is not only for the purpose of exposing grounds for challenge for cause, if any exist, but also to elicit such facts as will enable counsel to exercise their right to peremptory challenge intelligently." *M. O'Connor & Co.* v. *Gillaspy* (1908), 170 Ind. 428, 431, 83 N.E. 738, 739-740. More recently the Indiana Supreme Court has said that the right of peremptory challenge "can avail [an accused person] nothing unless her counsel is permitted to make an intelligent exercise of the right." *Wasy* v. *State* (1955), 234 Ind. 52, 56, 123 N.E. 2d 462, 464, 46 A.L.R. 2d 1389. That was a case in which an abortion conviction was reversed because the trial court refused to permit defendant's counsel to examine a prospective juror as to her religious faith, if any. The clear implication of those holdings is that parties or their counsel have the right, on *voir dire* examination of prospective jurors,

3. *People* v. *Rigney* (1961), 55 Cal.2d 236, 10 Cal. Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186; Orfield, *Trial Jurors in Federal Criminal Cases,* 29 F.R.D. 43, 115 (1962); American Bar Association [Criminal] Standards Relating to Trial by Jury, Approved Draft 1968, page 66, commentary to § 2.4.

to inquire into any subject reasonably related to an intelligent exercise of the right of peremptory challenge. However, since the adoption of Trial Rule 47(A), Indiana Rules of Procedure (applicable to criminal cases by virtue of Criminal Rule 21), they no longer have the right to put their questions directly to the prospective jurors if the court chooses to conduct the examination himself. *White* v. *State* (1975), 263 Ind. 302, 330 N.E. 2d 84, 86, 47 Ind. Dec. 490. But no rule or decision of our Supreme Court has yet abolished the right of parties or their attorneys to ask questions indirectly on jury *voir dire*. This is so notwithstanding the emphasis recent decisions have placed on the right and duty of trial judges "to restrict interrogation to that which is pertinent and proper for testing the capacity and competence of jurors." *Robinson* v. *State* (1973), 260 Ind. 517, 521, 297 N.E. 2d 409, 412. On the contrary, *Hart* v. *State* (1976), 265 Ind. 145, 352 N.E. 2d 712, 717, 54 Ind. Dec. 85, impliedly iterates the right of the parties to participate in the *voir dire* examination and to ask, directly or indirectly, any non-repetitious question pertinent to the exercise of their right to challenge peremptorily or for cause.

It is a matter of common knowledge to all who have spent much time in Indiana courtrooms when counsel are permitted to participate directly, and without restriction, in the examination of prospective jurors, that the privilege is usually abused. As Mr. Justice Prentice noted in *Robinson* v. *State, supra,* "Much time and energy are consumed in interrogating not with a view towards culling prospective jurors because of bias or prejudice but to the end that bias and prejudice may be utilized to advantage and prospective jurors cultivated and conditioned, both consciously and subconsciously, to be receptive to the cause of the examiner." 260 Ind. at 521. After opining that the practice should terminate, the court suggested "that this can be best accomplished by the trial judge's assumption of a more active role in the *voir dire* proceedings and exercising, rather than abdicating, his broad discretionary power to restrict interrogation to that which is pertinent and

proper for testing the capacity and competence of the jurors."
Id.

Indiana, of course, has not been alone in suffering this abuse
and in urging reform. See, e.g., *State* v. *Manley* (1969), 54
N.J. 259, 255 A. 2d 193; American Bar Association
Project on Standards for Criminal Justice, STAN-
DARDS RELATING TO TRIAL BY JURY, Approved
Draft, 1968, § 2.4, p. 63. But we have seen no judicial opinion
or other authority which has suggested that an inflexible time
limit is a proper remedy for the abuse. There are, however,
three Indiana Supreme Court opinions which have approved
remedial practices which either eliminate all direct *voir dire*
interrogation by the parties or their attorneys or permit only
twenty minutes of direct interrogation, supplemented in both
practices by written questions submitted by the parties
through the judge. *White* v. *State* (1975), 263 Ind. 302, 330
N.E. 2d 84, 47 Ind. Dec. 490; *Owens* v. *State* (1975), 263 Ind.
487, 333 N.E. 2d 745, 752; *Hart* v. *State* (1976), 265 Ind. 145,
352 N.E. 2d 712, 716, 54 Ind. Dec. 85, 88. In *White* the judge
himself put all questions to the prospective jurors: first his
own questions and then questions of the parties which they
submitted to him in writing. In *Owens* and *Hart* the trial
court permitted each party to interrogate directly for twenty
minutes. Thereafter the parties were permitted to submit
written questions to the judge who put them to the jury if
he found them proper. As the *Owens* opinion states, "This
rule did not restrict questioning of prospective jurors—it only
determined the questioners." 333 N.E. 2d at 752. The instant
rule definitely does restrict questioning but not as the *Robin-
son* opinion advocated, "to that which is pertinent and proper
for testing the capacity and competence of the jurors." 260
Ind. at 521.

We recognize the need for conserving judicial time, but are
even more concerned that the trial court's Rule 13(e), as
applied in this case, appears to satisfy that need at the expense

of the right to a trial by an impartial jury.[4] A concomitant of that right is the right, well recognized in Indiana,[5] to participate in the jury *voir dire* to the extent reasonably necessary to an intelligent exercise of the right to challenge prospective jurors peremptorily. Although there is nothing in the record to indicate that the jury was not impartial there is nothing to indicate that it was. The cold transcript of the trial testimony contains sufficient evidence to sustain the verdict, but there are some peculiarities the weight of which we cannot assess since we did not observe the witnesses and cannot judge their reliability. We cannot, therefore, say that Anderson was not prejudiced by the court's refusal to extend his time for *voir dire.*

The judgment is reversed and the cause is remanded with instructions to grant appellant a new trial by a jury selected consistent with the views expressed herein.

Sullivan, J., concurs.

Buchanan, P.J., dissents with opinion.

## DISSENTING OPINION

BUCHANAN, P.J.—I dissent on these grounds:

I.  Rule 13 of Division Three of the Criminal Court of Marion County is not properly before us.

II. The majority fails to follow a ruling precedent of the Indiana Supreme Court, to-wit, *Hart* v. *State* (1976), 265 Ind. 145, 352 N.E.2d 712, which specifically held a twenty minute limitation on oral voir dire examination by counsel was not, as such, an abuse of discretion.

### I.

There is authority in Indiana for the proposition that the Court of Appeals cannot take judicial notice of the rules of trial courts. In *State ex rel. Rose* v. *Hoffman* the Court said:

---

4.  Ind. Const., Art. I, § 13.
5.  *Wasy* v. *State, supra,* 234 Ind. 52, 56, 123 N.E.2d 462, 464, 46 A.L.R.2d 1389; *Hart* v. *State, supra,* 352 N.E.2d 712, 717, 54 Ind. Dec. 85, 89.

Respondent has not given us a copy of the rule he claims to rely upon. We cannot take judicial notice of the rules of Circuit courts or other *nisi prius* courts. 2 Gavit, *Indiana Pleading & Practice,* § 365 p. 2169. I Elliott, *General Practice* 175, § 188. *Rout* v. *Ninde et al* (1889), 118 Ind. 123, 20 N.E. 704. *State ex rel. Rose* v. *Hoffman* (1948), 227 Ind. 256, 260-61, 85 N. E. 2d 486, 488.

While it is true TR. 81 permits trial courts to make local rules, I see in it no reasonable implication that we may take judicial notice of such rules.

Nor was Rule 13 made a part of the record. Appellate courts do not consider questions which have no foundation in the record. *Buchanan* v. *State* (1975), 263 Ind. 360, 332 N.E.2d 213.

Thus I am not convinced that the validity of the rule is properly presented.

II.

Regardless of whether the rule is properly before us, voir dire was limited by the trial court . . . consistent with the recent trend in Indiana law. *Hart* v. *State, supra; Owens* v. *State* (1975), 263 Ind. 487, 333 N.E.2d 745; *White* v. *State* (1975), 263 Ind. 302, 330 N.E.2d 84; *Robinson* v. *State* (1973), 260 Ind. 517, 297 N.E.2d 409; TR. 47 (A) (allows the trial court to conduct voir dire).

In this case, as in *Hart,* the trial judge first conducted an oral examination of the jurors and then the Defendant orally questioned the jury for twenty minutes. Defendant in this case, however, did not follow the procedure in *Hart* and submit his own written questions after his twenty minute time limit had elapsed. He merely requested a five minute extension of time to conduct additional voir dire himself. There is no indication in the record that he requested the court itself to continue voir dire examination or that he submitted supplemental questions.

We cannot assume that the trial court would not have been willing to conduct further voir dire or to pose supplemental written questions had a proper request been made.

Because Defendant failed to avail himself of the potential for supplementing oral voir dire, he cannot assert error based on improper limitation of voir dire, and the holding in *Hart* must control:

> *A fortiori*, this trial court's rule limiting counsel to twenty minutes of oral questioning is not, on its face, and without more, an abuse of the court's discretion. *Hart* v. *State, supra* at 151, 352 N.E.2d at 716.

The denial of Defendant's request for additional time to conduct oral voir dire is insufficient to constitute an abuse of the court's discretion.

According to the doctrine of *Hart,* and *White,* TR. 47(A) has been construed to allow the trial court to preclude counsel from directly addressing prospective jurors with the proviso that in such event further inquiry shall be permitted by the parties, but such inquiry need not be in any "particular form." *White* v. *State, supra* at 306, 330 N.E.2d at 86. And this only applies if the trial judge has conducted voir dire examination exclusively.

In *White,* the Defendant was completely denied the right to "verbally supplement the court's voir dire" (but had the right to submit questions to the trial court); and the observation was made that "A trial judge has wide discretion in arranging and conducting a proper voir dire." *Supra* at 306, 330 N.E.2d at 86.

I cannot distinguish this case from *Hart,* i.e., "limiting counsel to twenty minutes of oral questioning is not, on its face, and without more, an abuse of the court's discretion." *Supra* at 151, 352 N.E.2d at 716.

Where is the "more"? There is no indication in the record Defendant was prejudiced or harmed. He made no attempt to submit oral or written questions to the trial court indicating particular areas of inquiry that should have been explored.

Thus I conclude the majority opinion directly contravenes *Hart* and is inconsistent with *Robinson, White* and *Owens.*

The judgment should be affirmed.

NOTE.—Reported at 359 N.E.2d 594.