Larry LUCAS and Paul E. Lucas, Jr., Appellants (Defendants Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 685S236.

Supreme Court of Indiana.

Nov. 14, 1986.

Joanne Tapocsi, Deputy Public Defender, Valparaiso, for appellants.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

This case presents a new version of a question we have visited before: does a trial judge violate the Indiana Constitution by giving an instruction on the silence of the defendant when one co-defendant asks that it be given and the other objects?

Appellants Larry Lucas and Paul E. Lucas, Jr., were tried jointly before a jury. Larry was convicted of three counts of burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1985 Repl.), and sentenced to three consecutive 20–year terms of imprisonment. Paul was convicted of four counts of burglary, a class B felony, Ind. Code § 35–43–2–1 (Burns 1985 Repl.), for which he was sentenced to consecutive 20–year terms of imprisonment on each count. Paul also was found to be an habitual offender, Ind.Code § 35–50–2–8 (1984 Supp.), and his burglary sentence was enhanced by 30 years.

In their joint direct appeal, the Lucas brothers present five other central issues:

1) Whether it is a denial of due process for a trial judge to limit voir dire examination to 35 minutes per side;

2) The extent to which a witness who has been granted immunity may assert the Fifth Amendment privilege against self-incrimination;

3) Whether being delivered to the courthouse in shackles and prison garb and being guarded by several police officers within the courtroom denies a defendant a fair trial;

4) Whether a defendant may challenge the underlying convictions in an habitual offender proceeding by showing that there is no transcript available.

5) Whether the court erred in imposing unduly harsh sentences.

The facts most favorable to the verdict show that Larry and Paul burglarized three homes in Porter County during a three-week period in late September 1983. The brothers drove truckloads of furniture and other items from two homes while the owners were vacationing. They burglar-

ized another home during the day while the owner was at work. Paul burglarized another residence by himself as the owners gardened in their front yard. The brothers had just moved into separate units of the same duplex. Short on furniture, they decorated their new quarters with much of the burglary proceeds. They also sold some of their ill-gotten merchandise.

The pair became suspects in the burglaries after police arrested Darrin DePaul for possession of a stolen motorcycle which he bought from the Lucas brothers. DePaul took an undercover police officer to the Lucas duplex. The officer purchased from Larry a gun which came from one of the burglarized homes. Larry told the officer that he acquired the gun when he burglarized the home of an elderly couple gardening in their front yard.

DePaul and the officer returned the next day and entered Larry's side of the duplex. They also looked through the window of Paul's unit. In both units the officer recognized items taken in recent burglaries. A search warrant was issued, and police found a substantial amount of stolen goods within both sides of the duplex.

Neither brother testified at trial. Larry tendered this final instruction:

> Under the law of the State of Indiana a person charged with the commission of a crime is a competent witness to testify in his or her own behalf. However, a person charged with the commission of a crime cannot be compelled to testify and is under no duty or obligation to testify. The fact that a defendant did not testify raises no presumption of any kind against him. A defendant's failure to testify shall not be commented upon, referred to, or in any manner considered by the jury in determining the guilt or innocence of that defendant.

The trial court overruled Paul's objection to the instruction and read it to the jury. Paul argues that giving the instruction over his objection violated his right not to be a witness against himself. Though giving the instruction over his objection does not violate his Fifth Amendment rights, *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), this Court has held that doing so violates Article I, § 14, of the Indiana Constitution. *Priest v. State* (1979), 270 Ind. 449, 386 N.E.2d 686.

On the other hand, Larry has the right under the Fifth and Fourteenth Amendments to require that such an instruction be given. *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). It is a right a defendant may assert so long as he does not testify. *Smith v. State* (1985), Ind., 474 N.E.2d 973. Thus, the trial court was in the untenable position of denying Larry's Fifth Amendment right to the instruction or denying Paul the opportunity to choose whether he wanted it given or not, a choice granted him by this Court under the Indiana Constitution.

Deciding in *Priest* that a defendant could bar the giving of the instruction, we relied upon "the basic premises of this Court's reasoning in *Gross* and *Hill*." 270 Ind. at 453, 386 N.E.2d at 689. In both cases, Justice Hunter emphasized that the decision to testify or remain silent was often an important matter of trial tactics and that whether a defendant would want an instruction given or not was also a matter of strategy. "If, as a trial tactic, the defense determines that such an instruction would assist its case, it may request the judge to so instruct." *Gross v. State* (1974), 261 Ind. 489, 491, 306 N.E.2d 371, 372; *see also, Hill v. State* (1978), 267 Ind. 480, 371 N.E.2d 1303.

Larry's Fifth Amendment right to an instruction warning the jury not to draw any adverse inferences from his silence must prevail over the right that this Court has granted under the Indiana Constitution to decide whether it suits him to have such an instruction given or not. Thus, the trial court correctly overruled Paul's objection to Larry's tendered instruction.

## I. Voir Dire

Both Larry and Paul challenge the trial court's restriction of voir dire exami-

nation to 35 minutes total per side. The trial judge refused to allow further time for voir dire when the defendants exhausted their 35 minutes. Three of the last five prospective jurors were questioned only by the prosecutor and Larry's attorney because the defense's time elapsed before Paul's attorney could begin questioning. The last juror and the alternate were seated after being questioned solely by the prosecutor, who had not exhausted her time.

Appellants argue by way of analogy to twenty-minute per side limitations during voir dire in the trial of a single defendant. Appellants assert that such twenty-minute limitations are proper only when the judge conducts the initial oral questioning of jurors and both sides are allowed to submit additional written questions. In this case, the trial judge left all questioning to the attorneys, and the record does not reveal any discussion about the submission of additional written questions.

, The trial court has broad discretionary power in regulating the form and substance of voir dire examination. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299. Some judges have attempted to expedite trials by limiting voir dire, and we have upheld these efforts when reasonable. We have affirmed the trial court's limit of twenty minutes per side in several cases in which the court conducted the initial voir dire examination and defense counsel was allowed to submit additional questions in writing. *Davis v. State* (1981), Ind., 428 N.E.2d 18; *Lynn v. State* (1979), 271 Ind. 297, 392 N.E.2d 449; *Hart v. State* (1976), 265 Ind. 145, 352 N.E.2d 712. However, we have not gone so far as to rule that 20–minute limitations on voir dire are proper *only* under those circumstances, as appellants suggest.

The function of voir dire is to ascertain whether the prospective juror can render a fair and impartial verdict in accordance with the law and the evidence. *Zachary v. State* (1984), Ind., 469 N.E.2d 744. Where the time for voir dire is limited, initial questioning by the court and submission of

written questions by counsel are precautions which help insure that the function of voir dire is accomplished. In *Zachary*, we held that no error occurred when co-defendants' voir dire was limited to a total of twenty minutes and accompanied by such precautions. Defense counsel in *Zachary* exhausted their time and were unable to question seven prospective jurors, four of whom were seated. Inasmuch as the Lucas brothers received nearly twice as much time as the co-defendants in *Zachary*, the additional precautions of court questioning and submission of questions were not required.

## II. Fifth Amendment Privilege

■ During a pre-trial conference, the prosecutor sought immunity for Teresa Swartz, Larry's girlfriend, so she could testify in a deposition scheduled by the State. The prosecutor stated that she would not attempt to introduce the deposition at trial unless Teresa were otherwise unavailable. The trial court granted the request. (Teresa did testify at trial as a State's witness, and her deposition was never introduced.)

At a subsequent pre-trial hearing on a motion to suppress, Swartz was called to the stand as a defense witness. At the advice of her own counsel, Swartz invoked the Fifth Amendment and refused to answer all but a few general questions. Defense counsel had hoped Swartz' testimony would substantiate Larry's claim that the probable cause affidavit in this case contained false statements by the undercover police officer. The officer swore in the affidavit that he had seen the stolen dining set, including its woodgrain tabletop, inside Paul's side of the duplex by looking through the front window. The defense alleged that the window curtains were closed and the table was covered.

Larry argues that the judge should have ordered Swartz to testify because she already had been granted immunity. Under Ind.Code § 35–37–3–3 (Burns 1985 Repl.), only the prosecutor may request immunity for witnesses in criminal prosecutions and only the trial court may grant it. *See, e.g.,*

*Bubb v. State* (1982), Ind.App., 434 N.E.2d 120. The court granted use immunity solely for the deposition and not for any other proceeding. Larry was in effect requesting an extension of the immunity in a manner unauthorized by Ind.Code § 35–37–3–3. Therefore, the trial court properly refused to compel Swartz to testify after she invoked the Fifth Amendment.

### III. Security and Use of Restraints

During trial, Paul Lucas was transported to and from the courthouse in leg shackles, handcuffs and prison garb. To prevent the jury from viewing these restraints, the court ordered that the Lucas brothers be brought to the courthouse after the jury was secluded in a waiting room. The court also ordered that the brothers be removed before the jury was allowed to leave. On the first day of trial, defense counsel suggested that despite the precautions the jury had an opportunity from its waiting room to view Paul in prison attire as he entered the courthouse. The prosecutor argued that such a view was, if not impossible, then certainly improbable.

Defense counsel asked the judge to question the jurors as to whether they observed Paul, but the judge refused. The judge did order, however, that the officers delivering the Lucas brothers use another courthouse entrance which could not be seen from the jury room. The judge also denied defense counsel's motion to reduce security after noting only two plainclothes officers remained in the courtroom.

■ A defendant has the right to appear before the jury free from shackles or other forms of physical restraint, but such restraints and other security measures are permitted to maintain courtroom security. *Loux v. United States* 389 F.2d 911 (9th Cir.1968), *cert. denied*, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135; *Jessup v. State* (1971) 256 Ind. 409, 269 N.E.2d 374.

■ On appeal, Paul argues that he was denied his right to a fair and impartial trial by the jury's opportunity to view his attire, by the judge's refusal to question jurors as

to their observations, and by the presence of guards in the courtroom.

Larry had been convicted of escape in 1976. Both Larry and Paul had been linked to two escape attempts during their pre-trial incarceration, although they had not been formally charged with those crimes. The security measures used during trial were not excessive and were implemented in a manner designed to prevent jury awareness. That objective may well have been reached because defense counsel does not contend that the jury actually saw Paul in shackles and handcuffs—only that it may have had the opportunity. Under these circumstances, the judge was justified in refusing to question jurors about their observations and in refusing to remove the two plainclothesmen from the courtroom. We conclude that Paul was not denied a fair and impartial trial by the use of these security measures.

### IV. Records of Prior Convictions

■ Counsel for Paul moved to dismiss the habitual offender charge on the grounds that no transcript existed of the guilty plea hearings which resulted in two of the three prior felony convictions alleged. She contended that the absence of a record of the two proceedings alone made those convictions "facially invalid" and therefore susceptible to attack during the habitual offender proceedings. She further contended that the lack of a record for a "facially invalid" conviction denied Paul an effective opportunity to challenge its constitutionality. The trial court denied the motion to dismiss, and the prosecution introduced several documents and witnesses substantiating its claim that Paul had three prior felony convictions.

The mere absence of a record does not always require the vacation of a guilty plea. *Zimmerman v. State* (1982), Ind., 436 N.E.2d 1087. Moreover, to sustain a collateral attack on the underlying felonies alleged in an habitual offender proceeding, an appellant must demonstrate that the documents used to prove the convictions, on their face, raise a presumption that the

convictions were constitutionally infirm. *Edwards v. State* (1985), Ind. 479 N.E.2d 541. A claim that the transcript is non-existent does not suffice for this purpose, and Paul has not included in the record any of the documents used to prove the convictions. The trial court properly denied the motion.

### V. Sentencing

■ Both Paul and Larry received the maximum penalties for the crimes for which they were convicted. The brothers argue that their sentences violate the Eighth Amendment and Article I, § 16 of the Indiana Constitution because they are unduly harsh and disproportionate to the crimes committed. Appellants suggest Paul must serve the equivalent of two aggravated murder sentences, and that Larry must serve the equivalent of one, for non-violent crimes amounting to "relatively minor criminal conduct."

This Court will not revise a sentence authorized by statute unless it is "manifestly unreasonable" in light of the nature of the offense and the character of the offender. A sentence is not "manifestly unreasonable" unless no reasonable person could find such sentence appropriate to that particular offense and offender. Ind. Rules for the Appellate Review of Sentences, Rule 2.

The length of the brothers' sentences is largely attributable to the number of crimes with which they were charged. Long imprisonment is a risk inherent in committing multiple felonies.

The judge aptly determined that short prison sentences would not be effective in rehabilitating the brothers. Paul, who was 30 at sentencing, had a criminal history dating back to his youth. He committed his first burglary as a juvenile. As an adult, he collected four burglary convictions and two theft convictions by 1978. Suspended sentences, probation and even incarceration had failed to deter Paul. We cannot disagree with the court's description of Paul as a "career burglar."

Larry, who was 25 at sentencing, had also been in trouble with the law since his early youth. Juvenile probation and commitment to the Indiana Boy's School failed to rehabilitate him. He was convicted of burglary when he was 18 and sentenced to five years in prison.

While no injuries occurred during the burglaries, the evidence showed Paul and Larry had a gun with them during the crimes. Larry boasted that if he had not found profitable merchandise within one house that he would have killed the victims who were gardening in their front yard. The other victims were not home when those burglaries occurred. Ready as they appeared to have been for the use of deadly force, the brothers' claim of non-violence as a matter of mitigation is not persuasive.

We also disagree with the brothers' depiction of the crimes as "relatively minor criminal conduct." While the victims collected either their property or insurance proceeds after the Lucas' arrest, they lost the sense of security so critical to the concept of "home." One victim told a court officer that her children no longer would stay alone in their house for fear that intruders would appear. Repeated illegal intrusion into individuals' most intimate environs when armed with a gun is not "relatively minor criminal conduct."

We conclude that the sentences imposed were neither cruel and unusual nor manifestly unreasonable.

### VI. Additional Allegations of Error

Appellants also raise several other issues which we will address briefly.

■ A. The appellants claim error from the admission of evidence concerning a stolen motorcycle which DePaul purchased from them. Though it was this motorcycle which led police to the Lucas brothers, no charges concerning the motorcycle were pending against them at trial. This passing reference to an item of stolen merchandise, absent any further evidence about the offense, is not a basis for reversal. *Hart-*

*well v. State* (1974), 162 Ind.App. 366, 321 N.E.2d 222.

B. Paul argues that the trial court erred when it refused to grant separate trials. He argues that he was prejudiced when a witness testified about an out-of-court statement by which Larry referred obliquely to him. Such an incidental reference does not prejudice Paul or merit the increased expenditure of time and money on separate trials.

C. Paul alleges photographs of a victim's home and furniture were misleading and admitted without a proper foundation. The jurors were informed of the discrepancies in the photographs. The owner testified that the photographs were true and accurate depictions of his home and stolen dining room set. The foundations were proper and the photographs were not misleading under the circumstances.

D. Paul challenges the trial court's denial of his motion to suppress his confession and any evidence obtained from the search of his side of the duplex. First, he argues that his confession was not voluntary and therefore was obtained in violation of the Fifth Amendment. Several police officers rebutted Paul's testimony that his confession was procured when he was enduring extreme pain, hunger, drug withdrawal, fatigue and police threats. Reviewing only the evidence which supports the trial court's ruling, we find no error. *Thomas v. State* (1983), Ind., 443 N.E.2d 1197.

Paul also alleges that evidence seized during the search was inadmissible because, he claims, the probable cause affidavit was defective. He suggests the warrant did not specifically describe his side of the duplex and the officer who prepared the probable cause affidavit did not establish the credibility of his informant. The warrant, which expressly notes that both sides of the "duplex" are to be searched, contains an adequate description of Paul's unit. Furthermore, the credibility of an informant in a probable cause affidavit is not required when, as in this case, the warrant is based upon the attesting officer's personal observations. *Mills v. State* (1978), 177 Ind.App. 432, 379 N.E.2d 1023.

E. The brothers claim error from the trial court's denial of their motion for change of venue. In support of their motion, they submitted only four newspaper articles, two of which were extremely brief. During voir dire, each prospective juror, save one, was asked whether he had read or heard anything about the case. Only one said he had heard of the case through the media, and he was excused. The defendant has failed to establish "a clear and convincing buildup" of community prejudice against him, and the trial court thus was within the range of its discretion in denying the motion. *Daniels v. State* (1983), Ind., 453 N.E.2d 160.

F. Paul argues that he was denied effective assistance of counsel because he was moved 10 times during his incarceration. The transfers were prompted by his two alleged escape attempts. He was never at an inaccessible distance from his attorney's office. We find no error because Paul cites no specific harm resulting from the transfer. *Hurley v. State* (1983) 446 N.E.2d 1326.

G. Larry contends the evidence was insufficient to convict him of the four burglaries. He maintains that the evidence at most established his possession or sale of stolen property because the evidence never placed him at the scene of the crime. However, the undercover officer testified that Larry boasted about burglarizing a home while the owners were in the front yard. Furthermore, the unexplained possession of the stolen property, in addition to the break-ins, was circumstantial evidence of guilt. Lucas' girlfriend also gave incriminating testimony which supported an inference of guilt. Larry's insufficiency claim must fail.

H. During the habitual proceedings, the trial court instructed the jury that they could find Paul to be an habitual offender if they found he was convicted of the underlying felonies. That instruction

did not comply with Ind.Code § 35–50–2–8, which requires that both commission and sentencing dates must be proven for an habitual offender finding. However, that error was cured by the next instruction which gave the definition of prior unrelated felony convictions. Thus, the charge as a whole properly informed the jury. *Hudson v. State* (1986), Ind., 496 N.E.2d 1286.

 I. Paul alleges the trial court erred by refusing to continue the sentencing hearing after he challenged some of the information in the presentence report as inaccurate. The judge instead declared that he would ignore the disputed material in determining sentence, and therefore no harm occurred.

 J. Appellants jointly claim that the cumulative effect of the alleged errors denied them a fair trial and due process of law. Alleged errors which do not present a single basis for reversal do not gain the stature of reversible error when viewed *en masse*. *Napier v. State* (1983), Ind., 445 N.E.2d 1361.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., dissents with respect to issue one and concurs with respect to all other issues.