(No. 37559.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY McELROY, Plaintiff in Error.

*Opinion filed January 22, 1964.—Rehearing denied March 16, 1964.*

Warren L. Swanson, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Defendant, Harry McElroy,.who was tried by a jury in the criminal court of Cook County, was convicted of unlawfully selling narcotic drugs and sentenced to the penitentiary for a term of not less than 10 nor more than 12 years. He prosecutes this writ of error for review contending: (1) that a proper foundation was not laid for the ad-

mission into evidence of a packet of narcotics; (2) that defendant was improperly examined concerning drug addiction; (3) that the closing argument of the prosecution was improper; and (4) that he was not proved guilty beyond a reasonable doubt.

On July 27, 1959, Chicago police officers William Alexander and William Wilson, both assigned to narcotics duty, were seated in separate automobiles parked a short distance apart on Madison Street, near its intersection with Morgan Street. Alexander was accompanied by an unidentified informer, while a second informer, one Andrew Gorlick, was in the car with Wilson. At about 5:45 P.M., defendant, who lived nearby, appeared on the street and was introduced to Alexander by the informer. According to Alexander, he inquired of defendant about the purchase of narcotics and, after a price had been agreed upon, defendant departed and entered a building at the corner of Monroe and Morgan streets. A short time later defendant returned to the automobile, handed a small tin foil package to Alexander, and received a recorded $10 bill in payment therefor. As further related by Alexander, the defendant then walked away and disappeared in a crowd, but again appeared on the street a short time later and was placed under arrest. Defendant first denied the sale, representing that it was probably his brother who was involved, and, when searched, the $10 bill could not be found. Instead, Alexander found only a $5 bill and a $1 bill, and upon further questioning defendant admitted the receipt of the $10 bill, but stated that he had given it to a person to whom he owed money and had received the other bills in change. Concluding his testimony, Alexander stated that defendant agreed to disclose his source of supply and directed the officers to a building on Jackson Boulevard. However, a search of an apartment there produced only some envelopes bearing the name of Milton Hill.

Officer Wilson, who stated that he was on the scene for the specific purpose of covering Alexander's activities, testi-

fied that while he was seated in the other car with Gorlick, he saw defendant, who was wearing a red shirt and suspenders, approach the Alexander vehicle and engage in conversation with Alexander. He also described defendant's movements to a nearby house and his return to Alexander's car, and stated that after talking with Alexander for a minute or so on the last occasion, defendant walked away and disappeared between some buildings. At this Wilson drove around the block attempting to locate defendant, but upon circling the block discovered that Alexander had taken defendant into custody. Wilson then went to Alexander's assistance and was given the packet Alexander said he had purchased from defendant. He testified defendant admitted that Milton Hill was his supplier and offered to take the officers to Hill's apartment, and related that they found only an empty room upon going there.

No field test was made of the contents of the packet but, instead, Wilson delivered it to the crime laboratory for analysis. Andrew Principe, a police chemist, testified that numerous tests disclosed the packet contained heroin.

Testifying in his own behalf, defendant denied any involvement in the alleged sale of narcotics, but insisted that he had been arrested without cause by Alexander. He said that Alexander searched his person and, upon finding only a dollar bill and some change, questioned him about a $10 bill and threatened him with violence when he denied knowledge. Following this, according to defendant, he was taken to his home where the officers found and took custody of a $5 bill, and it was at the suggestion of one of the informers that the officers went to the apartment on Jackson Boulevard. He denied that he had sold narcotics, that he had ever admitted to knowledge of the $10 bill, or that he had ever made statements about a source of supply or Milton Hill. He did, however, acknowledge that each of the officers was accompanied by an informer, and that he was wearing a red shirt and suspenders at the time of his arrest.

Defendant's claim that the proof fails to establish his guilt beyond a reasonable doubt is founded upon the failure of the prosecution to call either informer as a witness, and upon what defendant perceives as discrepancies in and between the testimony of officers Alexander and Wilson. The prosecution was not under obligation to produce the informers as witnesses, and it is fundamental that the People may accept the risk of negative inferences from the unexplained absence of a witness so long as the offense is otherwise proved. (*People* v. *Greer*, 28 Ill.2d 107; *People* v. *Aldridge,* 19 Ill.2d 176.) There was such proof in this case. We have examined carefully the alleged discrepancies relied upon by defendant and find that they do not exist, or are of a minor nature. Evidence was presented to show that defendant delivered a packet of heroin to Alexander in exchange for a $10 bill, and upon his arrest a short time later defendant admitted his guilt. Although denied by defendant at the time of trial, it was for the jury to decide the truthfulness of the witnesses and that determination will not now be disturbed.

At the trial a packet of heroin was admitted into evidence over defendant's objection and it is his contention that this ruling was error because there was neither testimony directly identifying the packet as the one received from defendant, (*People* v. *Polk*, 19 Ill.2d 310,) nor evidence establishing continuity of possession of the package and its contents from the time it was received from defendant to the time it was offered into evidence. (*People* v. *Judkins*, 10 Ill.2d 445.) However, the technique for preserving this exhibit and the foundation for its admission into evidence was identical with that we found to be sufficient in *People* v. *Anthony,* 28 Ill.2d 65, 69.

Upon direct examination by his own attorney, defendant was asked questions which elicited statements that he had not sold narcotics to Alexander at any time, that he was not using narcotics at the time of his arrest, and that he had

never used narcotics. In the same vein, during cross-examination, defendant was asked and responded in the negative to inquiries as to whether he was an addict, whether he had ever used heroin, and whether he had sold narcotics to Alexander before. Citing numerous decisions holding that evidence relating to offenses or acts of misconduct distinct and unrelated to the one for which an accused is on trial is incompetent and prejudicial, (*e.g. People* v. *Donaldson,* 8 Ill.2d 510,) defendant insists that the cross-examination was improper because of the tendency of the questions asked to insinuate that defendant had committed offenses other than the one for which he was charged. We have held, however, that it is proper to cross-examine a witness concerning his drug addiction as a matter affecting his credibility, (*People* v. *Crump,* 5 Ill.2d 251 ; *People* v. *Dixon, 22* Ill.2d 513,) but what is more important here, the questions asked on cross-examination had no greater tendency to suggest another offense than did the questions asked of defendant on direct examination. Having opened this avenue of inquiry, defendant is in no position to complain.

In his closing argument to the jury, defense counsel rhetorically inquired why the informer Gorlick had not been called as a witness by the People, and, over the prosecutor's objection, also argued that defendant had been cross-examined concerning drug addiction for the sole purpose of creating bias and dislike in the minds of the jurors. Responding to these matters in final argument, the assistant State's Attorney explained that Gorlick, whom the proof showed was in the county jail, could just as easily have been called by the defense, and also explained that drug addiction affects the credibility of a witness and that his questioning had been only an effort to establish whether defendant was worthy of belief. It is now urged that the explanation as to Gorlick was erroneous, and that the references to addiction were prejudicial as again insinuating defendant's guilt of another offense. We believe it quite ob-

vious, however, that the arguments of defense counsel invited the retaliatory comments and explanations of the prosecutor now complained about, and that the latter were therefore within the bounds of proper argument. (*People* v. *Hynes,* 26 Ill.2d 472; *People* v. *Kennedy,* 356 Ill. 151.) Furthermore, having failed to object to such argument in the trial court, as well as to comments concerning the role of the addict-informer in police work now complained about, defendant is deemed to have waived any error which resulted. *People* v. *Morgan,* 28 Ill.2d 55.

Near the close of his final summation, while dwelling on the evils of narcotics, the prosecutor made this comment: "Irrespective of whether you find the defendant guilty or not guilty becomes a philosophical question as to whether or not this man shouldn't be institutionalized." While we have some difficulty in ascertaining the grammatical sense or purpose of this comment, we have no difficulty in determining that it was improper argument. The function of the jury was to determine guilt or innocence solely on the basis of the competent proof before it. The collateral issue of whether defendant should be institutionalized for humane or medical reasons, (his counsel suggested to the jury during argument that defendant might be suffering from tuberculosis,) had no place in the case. At the same time, however, we do not believe the jury was so distracted from its duty or the evidence in the case as to result in reversible error. This is particularly true since the evidence shows beyond a reasonable doubt that defendant was guilty of the offense charged in the indictment. *Cf. People* v. *Armstrong,* 22 Ill.2d 420; *People* v. *Pelkola,* 19 Ill.2d 156.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*