THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY ROBERTS *et al.*, Defendants-Appellants.

Fifth District    No. 78-228

Opinion filed March 3, 1980.—Rehearing denied May 2, 1980.

Gomric and Strellis, of Belleville (James J. Gomric, of counsel), for appellants.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendants, Leroy Roberts and Joseph Bonner appealed from a judgment of the circuit court of St. Clair County entered on a jury verdict finding them guilty of conspiracy, bribery and official misconduct. They were both sentenced to concurrent one- to three-year terms on each count and fined $4000. On appeal they contend that the trial court erred (1) in refusing to suppress certain recordings obtained by the use of electronic eavesdropping equipment; (2) in denying their motions for mistrial due to alleged prosecutorial misconduct; (3) in denying their motion to dismiss the conspiracy count on equal protection grounds; and (4) in admitting certain evidence alleged to be immaterial. For the following reasons we affirm the judgment of the circuit court.

From February through April 1976, the Illinois Bureau of Investigation (IBI) was engaged in the investigation of alleged payoffs from local tavern owners to East St. Louis city officials. As a result of

conversations on February 5, March 21 and April 17, between IBI Agent George Murray and defendant Bonner, a lieutenant of the East St. Louis police department, and a conversation on March 13, between Agent Murray and defendant Roberts, an administrative aide to the mayor of East St. Louis, William Mason, defendants were charged with the aforesaid crimes as well as intimidation, a charge later dismissed by the State. Tape recordings of these conversations were made with the consent of Agent Murray, and it was those recordings which defendants moved to suppress.

A hearing on defendants' motion to suppress was conducted on September 29, 1976. Ronald Grimming, special agent squad leader of the IBI Belleville office, testified as to the procedure used in obtaining the State's Attorney's authorization to use the eavesdropping equipment. Agent Grimming testified that either by telephone or personal visit, he described the details of the subject investigation to the State's Attorney, suggested the need for using electronic eavesdropping equipment, and thereafter made "a request for a request" to use that equipment. The identity of those individuals to be recorded and the consenting party, Agent Murray, as well as the time of the anticipated recordings were expressly discussed. Oral authorization was given by State's Attorney Robert Rice on each occasion prior to the time of each recording. The electronic surveillance was then conducted with the consent of Agent Murray. The IBI prepared written forms of authorization which confirmed the prior oral authorizations and were signed by the State's Attorney. Those written authorizations contained the following limitations: (1) That IBI agents could use electronic eavesdropping equipment to hear or record all or any part of any conversations provided they obtained the consent of any one party to such conversations; (2) that the eavesdropping could occur only between certain hours on a specified date or dates unless further notification was received from the State's Attorney's office; (3) that the eavesdropping take place only within the boundaries of St. Clair County, and (4) that any information or evidence obtained through the use of the eavesdropping equipment be used or divulged only in criminal proceedings. Agent Grimming could not testify for certain that he had obtained written authorization prior to the time the surveillance was conducted, even though the written authorizations were dated prior to the time the eavesdropping occurred.

The trial court refused to suppress the recordings on the grounds that the authorizations given by the State's Attorney indicated who the individuals to be recorded were and who had consented to the eavesdropping. The first trial ended in a mistrial, and the second trial, beginning on October 13, 1976, was held for the following nine days. Harold Moore was also tried with defendants, and our opinion in his

appeal, No. 78-232, is filed contemporaneously with the present one. Since a detailed review of the testimony is unnecessary for purposes of this appeal, we shall present only those facts necessary to the disposition of each issue raised by defendants. The jury returned a verdict of guilty on the three aforesaid charges, and defendants filed a post-trial motion which was denied. It is from that denial this appeal is taken.

Appellants first contend that the trial court erred in denying their motions to suppress the recordings, arguing that such recordings were obtained in violation of the applicable Illinois statutes. The pertinent provisions in force at the time of the alleged offenses read as follows:

"A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so with the consent of any one party to such conversation and at the request of a State's Attorney; or

(b) Uses or divulges, except in a criminal proceeding, any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." Ill. Rev. Stat. 1975, ch. 38, par. 14—2.

"Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 14—5.)

Appellants argue that the conversations were overheard and recorded without proper authorization or approval.

These questions have been recently resolved by the Illinois Supreme Court in *People v. Kezerian* (1979), 77 Ill. 2d 121, 395 N.E.2d 551. There, as in the case at bar, oral authorization by State's Attorney Robert Rice was given to the IBI to record certain conversations after the time, nature of and parties to the anticipated recordings were explained to him. The request initiated with the IBI, but authorization was rendered by the State's Attorney. The electronic surveillance was then conducted. Subsequently, the IBI prepared written forms which confirmed the prior oral authorizations and were signed by the State's Attorney. Those written authorizations contained the same limitations as in the case at bar.

The *Kezerian* court, in discussing the source of the initial request and the restrictions of each authorization, forthrightly held that the procedures followed were sufficient under the eavesdropping statutes and that the recordings obtained pursuant thereto were improperly suppressed by the trial court.

"In our opinion former section 14—2(a) is not, as defendant characterizes it, an 'ambiguous statutory provision.' Rather, it seems to us to state clearly and concisely that one does not commit the offense of eavesdropping when he records a conversation 'with

the consent of any one party to such conversation and at the request of a State's Attorney' (Ill. Rev. Stat. 1975, ch. 38, par. 14—2(a)). Stated affirmatively, this section permits recording of a conversation by means of an eavesdropping device with the consent of any party to the conversation and at the 'request' of a State's Attorney. As the appellate court held and as is now conceded, *authorization by the State's Attorney is the equivalent of a request*, and it is indisputable that these conditions were met in the present case. Informant Ronald Fuentes, who was a party to each of the recorded conversations, consented to the surveillance, and St. Clair County State's Attorney Robert Rice gave *prior oral authorization to each IBI request for surveillance*. Although he did so here, *nothing in the statute requires the State's Attorney to attach any restrictions or limitations on his authorization for recording*, and it is not our function to impose requirements which the General Assembly apparently thought unnecessary.

We accordingly conclude that section 14—2(a) as it existed at the time of the activity here involved (Ill. Rev. Stat. 1975, ch. 38, par. 14—2(a)) did not require that the State's Attorney's authorization contain specific limitations as to the person conducting the surveillance, or the person or persons whose conversations were to be recorded." (Emphasis added.) 77 Ill. 2d 121, 128-29.

■■ Appellants' complaints that the authorizations were overbroad, that oral authorization was given prior to the surveillance with written authorization being given after the eavesdropping occurred, and that the requests for eavesdropping originated with the IBI rather than the State's Attorney, were all expressly rejected in *Kezerian*, the facts of which are nearly identical to those here. Likewise, this court has rejected appellants' remaining contention that the State's Attorney did not possess sufficient information to make an independent decision regarding the need for surveillance in *People v. Mosley* (1978), 63 Ill. App. 3d 437, 379 N.E.2d 1240, a case involving the same investigation at issue here. We noted there:

"Criminal investigations are the province of law enforcement agencies, and it is those agencies which will ordinarily be possessed of the information that will indicate the efficacy of eavesdropping. Consequently, the State's Attorney will in most instances be acting upon recommendations from such agencies. We can only believe that the legislature merely intended that eavesdropping be conducted with the authorization or approval of the State's Attorney. Any other interpretation would be senseless and ignore the practical realities of criminal investigations." (63 Ill. App. 3d 437, 443-44.)

Such an interpretation of the eavesdropping statute is also implicit in the holding of *Kezerian*, and we therefore reject appellants' arguments that the authorizations of the State's Attorney were inadequate because of insufficient knowledge. Accordingly, the trial court properly refused to suppress the recordings, and we so hold.

Appellants further contend that the trial court erred in denying their motion for a mistrial because of alleged improper conduct by the prosecution. A motion was made prior to trial to order the removal of the State's Attorney from the case since he had been subpoenaed as a witness for the defense. The motion was denied on the grounds that any testimony which the State's Attorney might be asked to provide appeared to be irrelevant to the issues of the case. The State's Attorney was then called as a witness by defendant Moore and on cross-examination by the subject appellants, the following occurred:

"Q. And on Pages 3 and 4 there is inquiry made of Agent Grimming as to his investigation in regard to Sheriff's, Sheriff O'Neal's contact, is there not?

A. Your Honor, at this time we would object on the basis that what Mr. Gomric's client, Mr. Merritts, had to say or been interrogated on, possibly slandering any individuals in Public Office in this County, such as Sheriff O'Neal, would be immaterial."

Appellants' counsel moved for a mistrial out of the hearing of the jury on the grounds that the answer was unresponsive to the question, commented on matters not in evidence and denied his client a fair trial. The motion was denied.

■■■ The State admits that "[t]o the extent that the report about which the State's Attorney was speaking had not been introduced into evidence, the State's Attorney's objection could, technically, be considered comments on facts not in evidence." However, the State argues that there was no prejudice to appellants, and we agree. It is difficult to see how a comment on someone else's views about a public official not on trial could affect the defendants actually on trial. Moreover, since the answer was unresponsive, defense counsel could have so objected, asked that the answer be stricken, and asked the court to instruct the witness to answer the question. Instead, counsel chose to move for a mistrial. The declaration of a mistrial lies within the discretion of the trial court, to be exercised when in the court's opinion there is a manifest necessity for it or where the ends of justice would be defeated by continuing the trial. (*People v. Grignon* (1976), 37 Ill. App. 3d 418, 425-26, 346 N.E.2d 82, *cert. denied sub nom. Erickson v. Illinois* (1977), 430 U.S. 909, 51 L. Ed. 2d 585, 97 S. Ct. 1181; *People v. Partee* (1977), 52 Ill. App. 3d 178, 181-82, 367 N.E.2d 188, *cert. denied sub nom. Partee v. Illinois* (1978), 436 U.S. 958,

57 L. Ed. 2d 1124, 98 S. Ct. 3074.) We find no abuse of discretion here. Appellants also note that after the State's Attorney had finished testifying under direct examination by their counsel, and on cross-examination by counsel for defendant Moore, the witness attempted to pass written questions to be asked of him to the Assistant State's Attorney. However, it was counsel for defendant Moore and not for appellants who objected to such procedure, whereupon the court ruled that the Assistant State's Attorney could ask questions without approaching the witness. When the witness later asked the court to allow him to propose questions to the Assistant State's Attorney by way of a note, the court without objection by any defendant ruled: "No, it's the same process—we've just gone through that." Since appellants neither objected to the procedure nor moved for a mistrial, they have waived their grounds to complain. (*People v. Adams* (1968), 41 Ill. 2d 98, 101, 242 N.E.2d 167; *People v. Baske* (1978), 66 Ill. App. 3d 590, 600, 383 N.E.2d 1322.) And while we do not condone the above tactic by the State's Attorney, we fail to perceive any prejudice which appellants suffered by these acts, especially since no notes were actually passed.

Finally, appellants contend that the following remarks made by the Assistant State's Attorney in his closing argument were prejudicial:

> "May it please the Court, Mr. Runge, Mr. Gomric, and ladies and gentlemen of the jury, my name is Steve Rice, I graduated from St. Louis U. Law School this year, passed the bar, and I have been back-seating my father, Mr. Rice, the State's Attorney, and I haven't participated very much up to this time, but I am now going to be giving you the closing argument. My father was precluded from giving the closing argument because he was called as a witness in this case."

No objection to these remarks was made at the time, and only after the State's entire closing argument did appellants move for a mistrial. We believe that appellants' objection after the closing argument constitutes a failure to make a timely objection and therefore a waiver of any error. (*People v. Nuccio* (1973), 54 Ill. 2d 39, 49, 294 N.E.2d 276; *People v. McElroy* (1964), 30 Ill. 2d 286, 292, 196 N.E.2d 651.) Moreover, the remarks were made as part of closing argument, and the jury was instructed that as such, any comments were not to be considered as evidence. Therefore, appellants were not prejudiced by these remarks and the trial court did not abuse its discretion in denying their motion for a mistrial.

Appellants also argue that the court erred in denying their motion to dismiss count I of the indictment. They charge that the conspiracy statute (Ill. Rev. Stat. 1975, ch. 38, par. 8—2) is a violation of equal protection of the laws (U. S. Const., amend. XIV; Ill. Const., 1970, art. I, §2) to the

extent it allows an individual to be charged with the felony of conspiracy where the underlying offense of gambling (Ill. Rev. Stat. 1975, ch. 38, par. 28—1) is punishable only as a misdemeanor. The Illinois Criminal Code proscribes conspiracy as follows:

> "A person commits conspiracy when, with intent that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator." (Ill. Rev. Stat. 1975, ch. 38, par. 8—2(a).)

An "offense" is defined as "a violation of any penal statute of this State." (Ill. Rev. Stat. 1975, ch. 38, par. 102—15.) While we view appellants' complaint to be that they were charged with conspiracy rather than gambling or the Class 3 felony of syndicated gambling (Ill. Rev. Stat. 1975, ch. 38, par. 28—1.1), which are matters within the realm of prosecutorial discretion (Ill. Rev. Stat. 1975, ch. 14, pars. 5(1), (6); *People v. Byrnes* (1975), 34 Ill. App. 3d 983, 986, 341 N.E.2d 729), we shall address the merits of the argument.

A review of the Committee Comments to the conspiracy statute reflects a clear legislative intent to punish as a substantive crime agreements between two or more persons who have the requisite intent.

> "However, the very nature of the offense requires an intent separate and distinct from the intent required in a prosecution for the principal offense which is the object of the conspiracy [citation]. Since an agreement (by words, acts or understanding) is required, there must be (1) an intent to agree. And, the *agreement* must be accomplished with (2) an intent that the offense which is the object of the agreement be committed." (Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 459 (Smith-Hurd 1972).)

Hence, the intent which is the object of the conspiracy prohibition is a two-fold intent, and as such is over and above the animus involved in the principal offense such as gambling.

That the legitimate goal of the conspiracy statute is to prohibit agreements to do certain acts as evils in and of themselves, and distinct from the offenses which are the objects of those agreements, is further evidenced by the Committee Comments surrounding the abrogation of the "Wharton Rule" in Illinois.

> "Since, under 8—2(a), conspiracy is committed when (with the required intent) there is an agreement to commit *any* [Committee's emphasis] offense, this eliminates in Illinois the application of the so-called 'Wharton Rule' in conspiracy, which says that if the object of the agreement is a crime which (by its very nature)

requires two or more persons to commit it, then the agreement does not amount to conspiracy because no greater danger is presented by the plurality of actors in the conspiracy than would be presented to the community in the commission of the principal offense. (*E.g., gambling* at cards, dueling, bigamy, etc.) [Citation.] The Committee felt that the Wharton Rule fails to take into account *the preventive aspect of prosecuting conspiracies, that is, to discourage the more dangerous criminal activity of several persons by punishing the preliminary agreement to engage in such activity. That the criminal activity is of such nature as to inevitably require more than one person in its accomplishment seems the more reason to punish the preliminary agreement to undertake it."* (Emphasis added.) (Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 459-60 (Smith-Hurd 1972).)

Thus, the evil of conspiracy to be punished centers around the group activity and combination inherent in such conduct. We view such preventive action as a rational and legitimate purpose of the legislature (*People v. Burleson* (1977), 50 Ill. App. 3d 629, 632, 365 N.E.2d 1162), and therefore, the General Assembly's punishment of conspiracy with intent to commit gambling as a Class 3 felony (Ill. Rev. Stat. 1975, ch. 38, par. 8—2(c)), with a conviction of the principal offense of gambling resulting in only a Class A misdemeanor conviction (Ill. Rev. Stat. 1975, ch. 38, par. 28—1(c)), is a legislative classification which is rationally designed to further that legitimate State purpose. (*Maher v. Roe* (1977), 432 U.S. 464, 470, 53 L. Ed. 2d 484, 492, 97 S. Ct. 2376, 2380; *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 17, 36 L. Ed. 2d 16, 33, 93 S. Ct. 1278, 1288; *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 96, 368 N.E.2d 903.) Accordingly, the statute withstands appellants' equal protection challenge.

Appellants cite *People v. Dorman* (1953), 415 Ill. 385, 114 N.E.2d 404, and *People v. Gordon* (1961), 22 Ill. 2d 616, 177 N.E.2d 118, in support of their position that differential sentencing between the inchoate and principal offenses constitutes a violation of equal protection. *Dorman* involved the determination of whether bookmaking was included in the language of the then operative conspiracy statute which prohibited acts "illegal" and "injurious to the public trade, health, morals, police, or administration of public justice * * *." Based on the history of the common law and rules of statutory construction, rather than on equal protection grounds, the Illinois Supreme Court held that bookmaking was not so included. Likewise, the *Gordon* court refused to address the constitutional issue, and concluded that since there was no explicit statutory language or legal precedent to support the position, the same

conspiracy statute was not intended to encompass a conspiracy to keep a gaming house or a handbook. However, the present conspiracy statute was revised and adopted as part of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 1—1 *et seq.*), and it contained the express prohibition of a conspiracy to commit "an offense" lacking in the previous statute. Since by statutory definition gambling is an "offense," it is properly forbidden as an object of conspiracy. Therefore, we abide by our conclusion that the sentencing classification under section 8—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—2(c)), punishing conspiracy with the intent to commit gambling as a Class 3 felony, does not violate equal protection of the laws.

Appellants finally contend that the trial court allowed admission of evidence with respect to their conduct prior to February 5, 1976, the date of criminal activity first alleged in the indictment. The evidence involved, among other things, other instances of accepting payments and nonenforcement of the gambling statutes. The State responds that such evidence tends to prove commission of the offense charged and was properly admitted to prove knowledge and intent on the part of appellants. However, we need not address this issue since, as the State notes, appellants failed to preserve these points for appeal by not including them in their post-trial motion, as required by section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 116—1). Therefore, these points have been waived.

Based on the foregoing, the judgment of the circuit court of St. Clair County is affirmed.

Judgment affirmed.

JONES, P. J., and SPOMER, J., concur.[1]

---

[1] Judge Moses Harrison II replaced Judge George J. Moran and Judge Dorothy Spomer replaced Judge Peyton H. Kunce, both of whom retired after oral argument.