THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES ROBINSON, Defendant-Appellant.

First District (5th Division)   No. 82—2073

Opinion filed February 10, 1984.

Steven Clark and Donna Finch, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jeanette Sublett, and David Kluever, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted and sentenced to concurrent terms of 30 years for two counts of armed robbery and a consecutive term of 30 years for armed violence. On appeal, he contends that the trial court erred in (1) denying his motion for a continuance; (2) not allowing him to exercise a peremptory challenge; and (3) refus-

ing to grant a mistrial when the State introduced improper evidence of (a) his prior statements and (b) his prior incarceration.

At trial, the owner and an employee of the Lucky Day Lounge (Lounge) testified that they were at work in the Lounge on December 13, 1979, when defendant entered and ordered a drink. He left approximately 45 minutes later, leaving the glass he had used on the bar. He returned in 15 minutes with a gun in his hand and ordered the employee, Bertha Cornelius, to put the money from the cash registers into a bag. After she complied, defendant ordered the owner, John Neal, to place the money from his pockets into the same bag. Defendant took the bag and started to leave, but stopped to hide the gun under his shirt when he saw police officers standing in front of the Lounge. Immediately after defendant departed, Neal told the officers of the robbery and pointed to defendant, who was still in sight. One of the officers pursued him, and two hours later Neal and Cornelius identified defendant in a lineup. Both also identified him at trial, as did a third witness who was a patron of the Lounge at the time of the robbery. Police evidence technicians established that fingerprints found on the glass used by the offender matched fingerprints taken from defendant at the time of his arrest.

Officer Marshall testified that when he and his partner made a traffic stop in front of the Lounge, he noticed defendant emerge from the Lounge carrying a paper bag and walk west through a vacant lot, and then Neal ran out and told him that defendant had robbed the Lounge. When ordered to halt, defendant began running, and during the pursuit he saw defendant drop the paper bag and a pair of sunglasses. Defendant continued running for a short distance, then turned, dropped to a crouch, and fired three shots. He (Marshall) returned the fire, and defendant began running again, firing two more shots as he ran; neither of them was injured in the incident. He lost sight of defendant, but learned that other officers found him hiding in a nearby apartment. Marshall identified defendant at the apartment and then recovered the paper bag and sunglasses. The bag contained cash and a receipt bearing the name of the Lounge.

Officer Pustay testified that during a search for defendant, he and his partner entered a rear yard of a nearby apartment building where he noticed that the screen door on the third-floor porch had recently been kicked in. They went up to the porch door and entered the apartment after noting that the rear door was also splintered and cracked. Defendant, clad only in underwear, was found in the apartment; he was breathing heavily and appeared to be highly agitated. After Officer Marshall identified him, defendant was placed under ar-

rest, and his clothing was recovered from a bedroom of the apartment. Another officer testified that a weapon with five expended cartridges was found in a hall linen closet.

Dr. Stipes, a psychiatrist employed by the Psychiatric Institute of Cook County, a defense witness, testified that in his opinion defendant was unable to conform his conduct to the law or to appreciate the criminality of his conduct on December 13, 1979. He said that during initial interviews, defendant was confused, disoriented, slow of movement and speech, and showed defects of recent and past memory. Based on these interviews, as well as on psychological tests and the reports of other psychiatrists, he concluded that defendant had suffered from organic brain syndrome since 1976, a disease which is manifested by confusion and illogical thinking. Those symptoms are exacerbated by the consumption of alcohol. Dr. Stipes acknowledged that in his earliest reports, he had stated that the disruption of motor coordination incident to organic brain syndrome made it highly implausible that defendant was physically capable of committing the crimes charged. He further admitted that his opinion was rendered prior to reviewing reports which showed that an EEG taken of defendant was normal; that when he first saw defendant, he had a suspicion that he was faking an illness; and that other psychiatrists and psychologists had indicated in their reports that there was a strong possibility that defendant was malingering. He explained, however, that those reports also stated that there were problems of memory and communication which could be indicative of organic brain syndrome.

Dr. Bogen, another psychiatrist employed by the Psychiatric Institute of Cook County, testified for the State in rebuttal that in his opinion defendant was able to conform his conduct to the requirements of the law and to appreciate the criminality of his acts at the time of the crime. He examined defendant twice after reviewing all available medical and police reports, and determined that he lacked the classic symptoms of organic brain syndrome; i.e., lack of orientation to person, time and place, low intelligence, poor reasoning power and memory, and lack of rational judgment. During interviews, defendant was able to remember and relate past events in detail, and his use of language indicated that he was of normal intelligence. Furthermore, defendant showed an ability to indulge in rather sophisticated abstract reasoning and showed excellent judgment. Dr. Bogen further testified that defendant was malingering; i.e., faking an illness or exaggerating the symptoms of an illness actually present. He noted that there were discrepancies between the objective findings

and what defendant claimed was his disability. While defendant asserted that he suffered brain damage as a result of a blow to his head in 1976, and such an injury was possible, the symptoms thereof would have appeared immediately and would have been most prominent during the period immediately following the injury. However, in defendant's case, no symptoms were reported during the year following the injury; in fact, during that time, reports indicated that defendant had a good memory and could engage in abstract reasoning. Moreover, there were numerous inconsistencies in the results reported by different psychiatrists, both in the information defendant was able to provide and in the tasks he was able to perform. Dr. Bogen also testified that defendant was uncooperative in the diagnostic evaluation, which is a further consideration in determining whether he is malingering. He also stated that the reports of five other interviewers also suggested the possibility of malingering, and that the fact defendant ran from the scene, shot at his pursuer, and tried to conceal his involvement were indicative of the ability to appreciate the criminality of his conduct.

OPINION

Defendant first contends that the trial court abused its discretion in denying his motion for a continuance. On the day trial commenced, defense counsel sought a continuance, explaining that he had not understood that trial was to begin that day, and that another attorney, who had expertise in psychiatric matters, was on vacation and would be unavailable to try the case with him for two weeks. In denying the motion, the trial court noted that the prosecutor had reminded defense counsel of the trial date several days in advance; that all discovery had been completed for a substantial period of time; and that the case had been pending for over two years.

Defendant acknowledges that the decision to grant or deny a continuance was within the sound discretion of the trial court (Ill. Rev. Stat. 1981, ch. 38, par. 114—4(e); *People v. Thibudeaux* (1981), 98 Ill. App. 3d 1105, 424 N.E.2d 1178), and that its determination will not be disturbed on review absent a clear abuse of that discretion (*People v. Surgeon* (1958), 15 Ill. 2d 236, 154 N.E.2d 253); that is, unless it appears that denial of the continuance impeded the accused's preparation of his defense or prejudiced his rights (*People v. Petrovic* (1981), 102 Ill. App. 3d 282, 430 N.E.2d 6). However, he asserts that this criterion is met in the instant case because the trial court's failure to grant the continuance deprived him of his right to effective assistance of counsel. He maintains that trial should have been delayed until co-

counsel was available to conduct the examination of the psychiatric witnesses.

Initially, we note that "[t]here is no mechanical test, statutory or other, for determining the point at which the denial of a continuance in order to accelerate the judicial proceedings violates the substantive right of the accused to properly defend." (*People v. Lott* (1977), 66 Ill. 2d 290, 297, 362 N.E.2d 312, 315.) Thus, we must weigh the particular facts and circumstances of the individual case before us in determining whether the trial court has abused its discretion (*People v. McEwen* (1982), 104 Ill. App. 3d 410, 432 N.E.2d 1043); however, we also note that denial of a continuance because of the unavailability or incapacity of counsel has been affirmed where co-counsel was available to adequately try the case (see *People v. Miller* (1958), 13 Ill. 2d 84, 148 N.E.2d 455, *cert. denied* (1958), 357 U.S. 943, 2 L. Ed. 2d 1556, 78 S. Ct. 1394; *People v. Davis* (1950), 406 Ill. 215, 92 N.E.2d 649; *People v. Cates* (1982), 111 Ill. App. 3d 681, 444 N.E.2d 543; *People v. Nobles* (1980), 83 Ill. App. 3d 711, 404 N.E.2d 330), since courts are reluctant to find prejudice where defense counsel was prepared and conducted the accused's representation with diligence and skill (*People v. La Fiura* (1981), 92 Ill. App. 3d 714, 415 N.E.2d 1365).

Defendant does not argue that the trial court lacked sufficient reason to seek a prompt resolution of this case. It had been pending for over 2½ years and had been the subject of numerous delays, many of which were occasioned by defendant. Moreover, the court was dealing with a defendant who had been found fit to stand trial after having been declared unfit. It is defendant's position, however, that the desire of the trial court not to further delay the trial should have yielded to his right to effective assistance of counsel.

The key question here, then, is whether defendant received adequate representation. Therefore, although defendant has not raised it as a separate issue, in determining whether the trial court abused its discretion in denying a continuance, we must consider whether defendant was denied the effective assistance of counsel which is guaranteed by the sixth and fourteenth amendments to the United States Constitution. (U.S. Const., amends. VI, XIV; *People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681.) In so doing, we are required to consider the totality of the circumstances rather than focusing on isolated incidents (*People v. Conley* (1983), 118 Ill. App. 3d 122, 454 N.E.2d 1107), and determine whether counsel was "actually incompetent as reflected in the performance of his duties as a trial attorney" to the extent that it affected the outcome of the trial (*People v. Martin* (1983), 112 Ill. App. 3d 486, 493, 445 N.E.2d 795, 802).

■ Defendant asserts that defense counsel was unprepared to conduct an insanity defense and his performance was therefore ineffective, citing as examples counsel's difficulty in eliciting the opinion of an expert witness; his failure to object to hearsay testimony introduced by the State during cross-examination of an expert witness; and his failure to object to a narrative answer given by the State's expert witness. We have considered each of these matters in the context of counsel's overall performance of his duties, and do not believe that they were indicative of incompetence or that they affected the outcome of the trial.

With regard to the direct examination of defendant's expert, it appears that counsel did have some difficulty in formulating the questions necessary to elicit the expert's opinion, prompting the court to sustain several objections based on the form of the question. However, counsel did bring out the requisite opinion; *i.e.*, that defendant was unable to conform his conduct to the law or to appreciate the criminality of his conduct at the time in question. Furthermore, in examining this witness, counsel also laid a proper foundation for his qualification as an expert, explored the basis for his opinion, and elicited extensive testimony detailing the procedures used in testing defendant. Since the testimony was eventually presented in an intelligible form, we do not believe that counsel's initial difficulty in formulating the question amounted to ineffectiveness. It is defendant's position that the outcome would have been different if an attorney more experienced in presenting an insanity defense had conducted the examination of the psychiatric witnesses; however, we will not indulge in mere conjecture or speculation as to the result of the trial had representation been of higher quality (*People v. Hills* (1980), 78 Ill. 2d 500, 401 N.E.2d 523).

With regard to counsel's failure to object on two occasions, we note that, in general, decisions on when to object and what objections to interpose are matters of trial strategy (*People v. Grant* (1976), 38 Ill. App. 3d 62, 347 N.E.2d 244), and we will not extend our review to areas involving the exercise of judgment, trial tactics, or strategy, even where appellate counsel or this court might have acted differently (*People v. Hebein* (1982), 111 Ill. App. 3d 830, 444 N.E.2d 782).

Here, defendant maintains that counsel should have objected to allegedly hearsay testimony. In cross-examining defendant's expert witness, the prosecutor inquired whether he had relied upon the report of Dr. Kelly, who did not testify at trial, in formulating his opinion. Then, although the witness stated that he had not relied on that report, the prosecutor proceeded to elicit the contents thereof. Defend-

ant asserts that while an expert psychiatric witness may be cross-examined with regard to reports upon which his opinion is predicated (see *People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171), the expert here stated that he had not relied on the Kelly report because it was not even available at the time he rendered his opinion; therefore, defendant insists, he should not have been questioned concerning the contents thereof. While we agree with this position of defendant, it appears to us that counsel's failure to object may have been a matter of strategy. We note that, on redirect, he elicited extensive testimony from the witness regarding portions of the Kelly report which were consistent with the opinion of the witness. For example, the witness testified that Dr. Kelly found that defendant had certain defects of memory and communication; that there were signs indicative of organic brain syndrome; that defendant suffered from headaches and delusions which were physical in origin; and that defendant suffered from other organic deficits. Counsel further brought out Dr. Kelly's statement that he could not determine whether defendant was sane at the time in question. The contents of this report were otherwise unavailable to defendant, and it was not likely that he would call Dr. Kelly as a witness since he had formulated no opinion on the issue of sanity. Defense counsel was able to demonstrate thereby that there was some corroboration for his expert's physical findings and that, despite numerous interviews, the State's expert witness was the only psychiatrist who had made a finding that he was sane when the crime was committed.

Defendant has also raised counsel's failure to object to a narrative answer given by the State's expert witness as further evidence of counsel's incompetence. While narrative answers are generally improper, if an objection had been made, the State could easily have elicited the identical testimony; thus, we cannot say that the outcome would have been different had counsel objected. See *People v. Moore* (1981), 105 Ill. App. 3d 264, 434 N.E.2d 300.

Considering the totality of the circumstances here, it is our view that defendant was not deprived of effective assistance of counsel, and therefore was not prejudiced in the presentation of his defense by the trial court's refusal to grant a continuance.

■ Defendant next contends that the procedure adopted by the trial court in selecting the jury denied him his right to freely exercise his peremptory challenges. The trial court called prospective jurors in panels of 12 and, after *voir dire*, required defendant and the State to submit written lists of the jurors they wished to peremptorily challenge; this was done simultaneously, so that, in exercising their chal-

lenges, neither side knew which jurors would be challenged by the other. The jurors remaining after these lists were submitted were sworn, and a second panel was called, sufficient in size to complete a panel of 12, whereupon the above-described manner of exercising peremptory challenges was repeated. In all, 17 peremptory challenges were exercised, but because of the procedure employed, it is impossible to determine how many challenges were exercised by defendant, which jurors were challenged by the respective sides, or whether, in the case of overlap, each side was deemed to have exercised a challenge. On appeal, defendant argues that the entire procedure was improper, and he also objects specifically to one particular incident. After *voir dire* of the initial panel of 12, each side submitted its list of challenges, and the lists were read aloud to the attorneys outside the presence of the prospective jurors. At that time, defense counsel stated that he had "inadvertently" omitted the name of one juror he intended to challenge, but also stated that he had expected the State to challenge that juror. The trial court ruled that the challenge was untimely, and the juror in question was sworn over defendant's objection.

Initially, we note that while defendant preserved the question whether he was timely in exercising his peremptory challenge by objecting at trial and raising the issue in his post-trial motion, it appears that no objection was made at trial to the procedure followed, and that defendant did not raise that issue in his post-trial motion. Under those circumstances, we would ordinarily deem the question waived for purposes of appeal. (See, *e.g.*, *People v. Washington* (1982), 104 Ill. App. 3d 386, 432 N.E.2d 1020 (failure to object to the court's practice of using panels of 12 waived the issue).) However, since this is a matter of first impression, and because "[t]he denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice" (*Swain v. Alabama* (1965), 380 U.S. 202, 219, 13 L. Ed. 2d 759, 772, 85 S. Ct. 824, 835), we have found it necessary to consider whether reversal is required pursuant to the plain error rule set forth in Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)).

For a number of years, the manner of selecting a jury in criminal cases was prescribed by a statute which provided in relevant part that "[a]fter examination by the court the jurors shall be examined, passed upon, accepted and tendered as a panel of 4 commencing with the State." (See, *e.g.*, Ill. Rev. Stat. 1977, ch. 38, par. 115—4(f).) Recently, however, that statute was amended to provide that the manner of selecting a jury shall be "as provided by Supreme Court rules." (Ill. Rev. Stat. 1981, ch. 38, par. 115—4(f).) Pursuant thereto, the supreme

court added Rule 434, effective April 1, 1982, which provides that "[i]n criminal cases the parties shall pass upon and accept the jury in panels of four, commencing with the State, *unless the court, in its direction, directs otherwise.*" (Emphasis added.) (87 Ill. 2d R. 434.) Thus, the trial court is now vested with discretion in determining the manner in which peremptory challenges may be exercised, but since this rule is of recent origin, we have no Illinois cases to guide us in the standard to be applied in determining whether the trial court has abused that discretion. However, because of defendant's failure to preserve the issue, for purposes of Rule 615(a) we need consider only whether, as defendant contends, the right to freely exercise his peremptory challenges includes the right to know what challenges have been exercised by the State prior to presenting his challenges.

■ Defendant asserts that the practice of requiring each side to submit written lists of challenges simultaneously prevents him from (a) knowing what challenges were exercised by the State, which (b) forces him to exercise peremptory challenges he need not use where the State has challenged the same juror. We cannot determine from the record before us whether any of the jurors in the instant case were challenged by both sides; however, we believe that both of these questions were resolved years ago by the United States Supreme Court in *Pointer v. United States* (1894), 151 U.S. 396, 38 L. Ed. 208, 14 S. Ct. 410. There, 37 potential jurors were found qualified to serve, and the defendant and the prosecution were then required to submit a list of those jurors they wished to challenge, the defendant being allowed 20 challenges and the prosecution five. After these lists were submitted, no further challenges were permitted, and the jury was selected from the first 12 names remaining. On appeal, the Supreme Court rejected the defendant's contentions that (a) he was entitled to know which jurors had been challenged by the prosecution, and (b) his right to exercise peremptory challenges was restricted by the fact that it was possible some jurors were stricken by both sides. It found that the defendant's right to exercise peremptory challenges did not include the right to have the State proceed first, noting that "the general rule is, that where the subject is not controlled by statute, the order in which peremptory challenges shall be exercised is in the discretion of the court." (151 U.S. 396, 410, 38 L. Ed. 208, 214, 14 S. Ct. 410, 415.) With regard to the defendant's second contention, the court stated:

> "It is true that, under the method pursued in this case, it might occur that the defendant would strike from the list the same persons stricken off by the government. But that circum-

stance does not change the fact that the accused was at liberty to exclude from the jury all, to the number of twenty, who, for any reason, or without reason, were objectionable to him. No injury was done if the government united with him in excluding particular persons from the jury. He was not entitled, of right, to know, in advance, what jurors would be excluded by the government in the exercise of its right of peremptory challenge." (151 U.S. 396, 412, 38 L. Ed. 2d 208, 215, 14 S. Ct. 410, 416.) Thus, since the right to exercise peremptory challenges does not include the right to have the State proceed first so that the defendant might preserve his challenges, we see no basis for reversal under the plain error exception set forth in Rule 615(a).

As noted above, defendant did preserve the question whether his right to exercise peremptory challenges was restricted by the court's ruling that his attempt to challenge a juror was untimely after the State's challenges had been disclosed.

The question whether a peremptory challenge was exercised in a timely manner has never been prescribed by statute; however, under the statutorily mandated procedure for selecting a jury, the rule developed that "when both sides have accepted a panel of jurors, it is too late for either side to exercise a peremptory challenge as to any member of that panel previously tendered to the other side" (*People v. Villa* (1981), 93 Ill. App. 3d 196, 200, 416 N.E.2d 1226, 1230), unless the party seeking to challenge a juror previously accepted demonstrates that new information has been revealed which, if known prior to acceptance, would have prompted him to exercise a peremptory challenge (*People v. Scheidt* (1983), 113 Ill. App. 3d 632, 447 N.E.2d 536). In the instant case, defendant did not predicate his challenge on any newly discovered information. He asserted that the omission was inadvertent, although his counsel also indicated that the omission may have been a calculated attempt to avoid "wasting" a challenge where counsel perceived a possibility that the juror in question would be challenged by the State. The question, then, is whether the jurors which remained after each side had exercised its peremptory challenges could be deemed accepted.

Defendant asserts that "it cannot be accurately argued that both sides had accepted a panel of jurors" because "[i]n the traditional method of selecting a jury, a panel of prospective jurors is not deemed 'accepted' until all prospective members have been openly tendered to both sides and both sides have accepted the panel in full." However, as defendant is well aware, the procedure followed here was not the "traditional" one. It is no longer mandated that the jury be "exam-

ined, passed upon, accepted and tendered as a panel of 4"; under Rule 434, the trial court may, in its discretion, direct otherwise. Clearly, the trial court here directed that any juror not challenged by either side would be deemed accepted, and defendant does not contend that such was not his understanding at the time he exercised his peremptory challenges. The question, then, is whether the trial court abused the discretion now vested in it pursuant to Rule 434.

■ Other than contrasting the procedure used here with the former, statutorily prescribed procedure, defendant makes no attempt to explain how he was "denied his right to exercise his peremptory challenges freely, without explanation, and without interference from the court." He could have included the name of the juror in question on his list of challenges. In other jurisdictions which allow the trial court discretion in setting the procedure for exercising peremptory challenges, it has been held that no abuse is demonstrated where the defendant has adequate notice of the system to be used, and the method chosen does not unduly restrict the use of challenges (see, e.g., *United States v. Turner* (9th Cir. 1977), 558 F.2d 535), and it has also been held that there is no abuse of discretion in requiring that both sides exercise their challenges simultaneously and in writing (see, e.g., *United States v. Roe* (11th Cir. 1982), 670 F.2d 956, *cert. denied* (1982), 459 U.S. 856, 74 L. Ed. 2d 109, 103 S. Ct. 126; *United States v. Sarris* (5th Cir. 1980), 632 F.2d 1341; *Carbo v. United States* (9th Cir. 1963), 314 F.2d 718, *cert. denied* (1964), 377 U.S. 953, 12 L. Ed.2d 498, 84 S. Ct. 1626; *Hart v. State* (1976), 265 Ind. 145, 352 N.E.2d 712). Therefore, it appears to us that if the procedure used is not an abuse of discretion, then there can be no such abuse in refusing to allow defendant to exercise a challenge once he has submitted his list and has been informed of the State's challenges. To hold otherwise would negate the entire procedure and render meaningless our determination that the procedure itself is not an abuse of discretion. Once counsel submitted their lists, the jurors who were not challenged by either party were deemed accepted by both, and the trial court did not abuse its discretion in so ruling.

■ Finally, defendant contends that the trial court erred in refusing to grant a mistrial when the State's expert witness (a) testified to a statement made by defendant during the course of his examination, and (b) revealed that defendant had been incarcerated previously.

The decision whether to grant a mistrial is within the broad discretion of the trial court (*People v. Watson* (1982), 103 Ill. App. 3d 992, 431 N.E.2d 1350), and its determination will not be reversed unless it appears that there was a manifest necessity for the mistrial or

that the ends of justice would be defeated by continuing with the trial (*People v. Roberts* (1980), 83 Ill. App. 3d 311, 404 N.E.2d 278). Thus, it must appear that the jury has been so influenced and prejudiced that it would not, or could not, be fair and impartial (*People v. Rose* (1979), 77 Ill. App. 3d 330, 395 N.E.2d 1081), and the damaging effect cannot be remedied by admonitions or instructions (see *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239).

Defendant first argues that he was denied a fair trial when the State introduced improper testimony regarding the result of a verdict of not guilty by reason of insanity. In explaining the basis for his opinion that defendant was not suffering from organic brain syndrome, the State's expert stated:

> "I find him having, in my opinion, rational judgment, and I say that for good reason, because in talking with him and examining the record, it's indicated that \*\*\* he knew that his defense would be not guilty by reason of insanity. He knew that if found that way he would not have to serve 30 years, but perhaps 5 and 10, and with time already served he indicated he would be up in 3 or 4 years \*\*\*."

Defendant acknowledges that the above testimony was admissible under a statute which provides that "[s]tatements made by the defendant \*\*\* in the course of any examination \*\*\* ordered [to assess fitness] \*\*\* shall not be admissible against the defendant unless he raises the defense of insanity \*\*\*, in which case they shall be admissible only on the issue of whether he was insane \*\*\*." (Ill. Rev. Stat. 1981, ch. 38, par. 104—14.) Nevertheless, he argues that the prejudicial effect of this statement outweighed its probative value because it appealed "to the fears of the jurors that they may be responsible for the future criminal behavior of the accused should they acquit him."

We disagree with defendant's characterization of the above statement; if anything, it implies that defendant would be incarcerated even if the jury found him not guilty by reason of insanity. Moreover, it was highly probative of defendant's ability to engage in abstract reasoning and make rational judgments, a fact placed in issue by the testimony of defendant's expert witness, whose diagnosis was based in large part on a finding that defendant was incapable of engaging in abstract reasoning or making rational judgments.

Furthermore, as defendant seems to acknowledge, where testimony is proper for one purpose, but improper for another, the defendant may request a limiting instruction. No such instruction was given or requested in the instant case, and the usual rule is that one who fails to request an instruction cannot complain of its absence. (*People*

*v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689.) The sole relief requested by defendant was a mistrial; that motion was properly denied because the testimony was admissible on the issue of sanity. Thereafter, defendant could have requested a limiting instruction, but failed to do so. We find no error in the trial court failing to give such an instruction *sua sponte*; the statement in question was not inculpatory, nor did it reveal anything of defendant's involvement in prior crimes. Its only possible value was as evidence of defendant's mental condition, and in our view it does not even introduce improper considerations of the consequences of a not guilty by reason of insanity verdict, since it contains no implication that defendant would go free if such a verdict were reached.

■ Defendant also maintains that a mistrial should have been granted when the expert witness revealed that he had been incarcerated previously, in violation of a ruling precluding introduction of that information. During direct examination, the witness was asked whether defendant remembered, and was able to give details of, events which occurred prior to 1979. Before the witness answered, defense counsel requested at a side bar conference that the witness be precluded from revealing the details of what defendant remembered, *i.e.*, that prior to 1979 he was serving a term for murder. The motion was granted, and the witness was admonished that, in describing defendant's ability to remember, he was to avoid giving specific details which might reveal that defendant had been in the penitentiary for murder. The witness complied, but in answering a subsequent question regarding the basis for his opinion that defendant was malingering, he stated:

> "In reviewing the records, there was a report from Dr. Kelly, and Dr. Kelly reviewed the Correctional Report, the records from some correctional place, I don't know where that was. But Dr. Kelly reports that following his injury—from the report *** he was well oriented."

Defendant characterizes the above testimony as a deliberate disregard of the trial court's ruling, and so prejudicial as to require the granting of a mistrial.

We question whether the above statement was encompassed by the preclusion ruling, which was couched in terms of what the witness might reveal in connection with defendant's ability to remember past events; certainly that is how it was explained to the witness. For this reason, we believe that the above reference was inadvertent, not a deliberate disregard for the court's instruction. Furthermore, we have held that such inadvertent, isolated references, even where they

clearly state that defendant was previously incarcerated, are not necessarily so prejudicial as to require declaration of a mistrial. (See, *e.g., People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029.) We find that rule particularly appropriate in the instant case. Defendant has never denied committing the acts charged, choosing to raise instead the defense of insanity. The testimony in question did not tend to negate that defense, therefore we do not believe that it was so prejudicial as to require a mistrial. See *People v. Upshaw* (1981), 103 Ill. App. 3d 690, 431 N.E.2d 1138.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.