THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY EUGENE MOSS, Defendant-Appellant.

First District (2nd Division)   No. 83—2394

Opinion filed October 23, 1984.

James J. Doherty, Public Defender, of Chicago (Linda J. Seeley and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Timothy J. Joyce, and Kevin Sheehan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Defendant, Larry Eugene Moss, and two codefendants who are not parties to this appeal were charged by information with armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2), unlawful restraint (Ill. Rev. Stat. 1981, ch. 38, par. 10—3), and armed violence (Ill. Rev. Stat. 1981, ch. 38, pars. 33A—2, 10—3). Defendant was tried separately before a jury and was found guilty as charged. He was subsequently sentenced to concurrent terms of 13 years' imprisonment for the armed robbery conviction and three years' imprisonment for the unlawful restraint conviction. On appeal, defendant's sole contention is that the cause should be remanded for a new trial because the trial court failed to allow him to excuse a juror with a peremptory challenge.

The record shows that at approximately 7 a.m. on January 23, 1983, Frank Curry, the owner of the Juneway Shell station located at 7740 North Sheridan Road in Chicago, entered the main building of his service station. After he unlocked the door and proceeded to the car wash area inside, he was surprised by a lone gunman wearing a rubberized Halloween mask which covered his entire face. The man pointed a sawed-off shotgun at Curry and threatened to kill him if he did not cooperate. The questions posed and directions given by this man led Curry to believe that he was familiar with the operation of the station; however, Curry did not recognize him to be a present or former employee.

The police were called to the scene by an employee who, upon arrival at work that morning, became aware that a robbery had taken place. The gunman, however, whose identity remained unknown, had already fled with approximately $500.

During the police investigation which followed, Caleb Colton, an employee who was on duty at the booth outside the gas pumps when the incident occurred, and a former employee, Perry Mack, who had been discharged the week before, were arrested and charged in con-

nection with the crime. The investigation subsequently focused on locating a person known by the streetname of "Pac Man." Colton's fiancee told police that she was familiar with a person by that name and that he had visited her home during the previous holiday period wearing a scary blue mask. She later identified a photograph of the defendant as "Pac Man"; thereupon, he was arrested and charged with the crimes of unlawful restraint, armed robbery and armed violence.

Following his arrest, defendant gave police a written statement in which he not only admitted his participation in said offenses, but implicated Colton and Mack as well. His version of the robbery mirrored that given by the owner of the station. But he also added that he had thrown both the mask he was wearing and his gun into a garbage can as he fled.

Defendant's pretrial motion for severance was granted, and he was tried separately by a jury while the charges against his codefendants were still pending. The record reveals that before jury selection began, the court advised opposing counsel that once a side accepted a juror and tendered that panel to the other side, that side could not come back and dismiss a juror who had previously been accepted. Despite defense counsel's objection to this method of selection, the rule was put into effect.

After two panels of veniremen had been accepted and sworn, the State accepted a panel which included Ms. Terry Lach. The defense excused a venireman from this panel, accepted another and tendered this panel of four, including Ms. Lach, to the State. The State then excused one venireman, added another, then tendered the panel to the defense. At this point, defense counsel sought to excuse Ms. Lach. Defense counsel explained that since a different person had been added, he felt that the composition of the panel had changed and he wished to excuse Ms. Lach. The court denied his request, citing the method of procedure which had been established before jury selection began. The court then stated that it invoked this procedure under the present rules which placed jury selection in its discretion and for the purpose of avoiding "gamesmanship." Counsel acknowledged the admonition but entered his continuing objection to the procedure instituted by the court.

Defendant was then tried by the jury, found guilty as charged and sentenced to a concurrent term of 13 years' imprisonment. On appeal, defendant questions the propriety of the trial court's ruling which, he asserts, deprived him of his right to exercise a peremptory challenge.

Prior to being amended in January 1980, section 115—4(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par.

115—4(f)) provided in pertinent part that: "After examination by the court the jurors shall be examined, passed upon, accepted and tendered as a panel of 4 commencing with the State." As amended, the statute provides that opposing counsel may examine, pass upon, accept and tender the jurors as provided by the Supreme Court Rules. (Ill. Rev. Stat. 1981, ch. 38, par. 115—4(f).) Supreme Court Rule 434 provides that:

> "In criminal cases the parties shall pass upon and accept the jury in panels of four, commencing with the State, unless the court, in its discretion, directs otherwise." (87 Ill. 2d R. 434, eff. April 1, 1982.)

Accordingly, this court has held that the trial court is now vested with discretion in determining the manner in which peremptory challenges may be exercised. *People v. Robinson* (1984), 121 Ill. App. 3d 1003, 1012, 460 N.E.2d 392, *appeal denied* (1984), 101 Ill. 2d 550.

Defendant asserts, however, that Rule 434 merely allows the trial court to establish a method of choosing jurors other than in panels of four, and says nothing about limiting the parties' ability to exercise peremptory challenges in a given panel. Since the trial court did not elect to depart from the statutory procedure of selecting jurors in panels of four (Ill. Rev. Stat. 1981, ch. 78, pars. 21, 23), it is now maintained that the court remained governed by the procedures previously approved, including the general rule that until both sides have accepted a panel of four jurors, either side may exercise a peremptory challenge to eliminate a juror previously tendered to the other side. *People v. Murray* (1966), 73 Ill. App. 2d 376, 220 N.E.2d 84, relying on *People v. Schanda* (1933), 352 Ill. 36, 185 N.E. 183, and *People v. Gray* (1911), 251 Ill. 431, 96 N.E. 268.

■ Based on the interpretation of Rule 434 set forth in *Robinson*, we initially find that the trial court had discretionary power to determine the method in which peremptory challenges would be exercised. We do not believe that the court's decision to select the jurors in panels of four alters this determination. Thus, the question we must resolve is whether the court abused its discretion and unduly restricted defendant's right to exercise a peremptory challenge by the procedure invoked.

Under the former statutorily mandated procedure for selecting a jury, the rule developed that once both sides accepted a panel of jurors, it was too late for either side to exercise a peremptory challenge to any member of that panel previously tendered to the other side. This held true unless, of course, the party seeking to challenge a specific juror demonstrated the reception of new information which, if previ-

ously known, would have prompted an exercise of a peremptory challenge. (*People v. Robinson* (1984), 121 Ill. App. 3d 1003, 1013, citing *People v. Scheidt* (1983), 113 Ill. App. 3d 632, 447 N.E.2d 536, *appeal denied* (1983), 96 Ill. 2d 548.) In the instant case, defense counsel did not predicate his challenge to the previously accepted juror on any new information; rather, he merely stated that he was seeking to excuse her because he felt that the composition of the panel had changed.

During *voir dire*, Ms. Lach and the other prospective jurors were questioned extensively by the court. The record shows that Ms. Lach did not express any hesitation about sitting as a juror, and there is nothing in her responses which would indicate bias on her part or call into question her ability to act as an impartial juror. (See *People v. Villa* (1981), 93 Ill. App. 3d 196, 200-01, 416 N.E.2d 1226.) Notwithstanding this appraisal, it is clear that counsel could have excused her with a peremptory challenge at this time, but chose not do so. Instead, he accepted her and tendered the panel to the State. When the State returned the panel with a new member, counsel did not challenge the person who, when added, apparently tipped the balance in counsel's estimation; rather, he sought to excuse the previously-accepted Ms. Lach, thereby running afoul of the rule invoked by the court. In denying his request to exercise a peremptory challenge to Ms. Lach at this time, the court stated that it was acting under the present rules "in spite of the older case of *People v. Gray*," and it reminded counsel that both sides had been forewarned. Counsel acknowledged his awareness of the rule but once again objected to it.

■ It is our opinion that the trial judge here acted in accordance with his discretionary power by invoking a proper procedure for the exercise of peremptory challenges in the selection of the jury and advising the parties of such procedure before the process began. Moreover, the record indicates that the procedure did not unduly restrict the exercise of these challenges. We further stress that defendant did not predicate his challenge on any newly discovered information. Therefore, under *Robinson*, we find no abuse of discretion in the trial court's denial of defense counsel's peremptory challenge.

For the reasons set out herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.